# Henry and Wife *v.* Klopfer, Appellant.

*Negligence—Leaving horse unhitched in street.*

To leave a horse unhitched and unattended in a public street is prima facie evidence of negligence, and puts the burden of proof upon the defendant to show that there were circumstances which excused or justified his conduct.

*Charge to jury—Reading of authorities by trial judge.*

Where a trial judge correctly states in his charge a proposition of law, it is not improper for him to read authorities in support of his views.

*Comment by court on the law as stated in charge.*

It is not improper for a trial judge in charging the jury to comment upon the law as stated in the charge as a rule of common sense.

*Assignment of dismembered portion of charge as error.*

In an action for damages for an injury caused by a horse left unhitched in a street, it appeared that the horse had been purchased on trial by the defendant only two weeks before the accident. The trial judge in contrasting the measure of care necessary to be exercised when using a horse which one might know to be peaceable and safe, with that which should be exercised when using a horse with whose peculiarities he is not familiar, said: " And even if it were justifiable to leave his own horse

however well he may have known it, however peaceable he may have known it to be, here was a horse whose disposition he, in the nature of things, could not know." *Held* that there was no error in the portion of the charge quoted.

*Measure of damages to husband for injury to wife.*

Where a wife is injured by the negligence of another, the husband is entitled to recover the moneys he has expended or become liable to pay for the medical care and attendance upon his wife during her illness, and for the loss of her services while unable to attend to her domestic duties.

Argued Oct. 29, 1891. Appeals, Nos. 137 and 138, Oct. T., 1891, by defendant, from judgments of C. P. No. 1, Allegheny Co., June T., 1890, Nos. 601 and 602, on verdict for defendant. Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Assumpsit by J. B. Henry, and J. B. Henry and M. A. Henry his wife, in right of said wife, against Charles Klopfer, to recover damages for personal injuries sustained by M. A. Henry through the alleged negligence of the defendant. The two cases were tried together.

At the trial it appeared that the defendant on March 15, 1890, left his horse unhitched in Federal street, Allegheny, in front of an express office. The horse became frightened, ran away and injured Mrs. Henry.

SLAGLE, J., charged the jury in part as follows .

"It is not necessary that the plaintiff should show that her negligence did not contribute to it, but it is sufficient that the evidence does not show that it contributed to the accident. I was asked, as to her, to instruct you that, as a matter of law, the leaving of a horse unhitched in a public street of the city, and especially such a street as we all know Federal street, Allegheny, to be, is in law negligence. I do not feel so sure of the proposition as to so instruct you, and I have therefore refused that point. It seems to me, however, that it is, in its very nature, of such a character of neglect of duty that it would justify you in finding that it was an act of negligence, unless by clear evidence on the other side the fact that it was not negligence was shown, and I therefore leave it to you to decide as a matter of fact, instead of ruling it as a matter of law. [I wish to read what has been said by some authorities. in reference to

this matter, which shows the rule in better language probably than I could put it, and what should govern.

'The owner of any kind of an animal, whether it be wild or tame, is chargeable with notice of its generic disposition to stray and liability to take fright. If its size and speed are such as to make it dangerous, under such circumstances the owner is bound to use ordinary care to keep it from straying, and if he neglects to use that he will be liable for all injuries committed by it while straying which he ought, in prudence, to have foreseen as likely to occur. For this reason the owner of a horse is liable for damages done by it in running away if he has not used due diligence to prevent its escape, and this even if the immediate cause of the horse running away was the wrongful act of a stranger.'

And again : 'The owner is nowhere held liable for injuries inflicted by a domestic animal, such as a horse, while running away from him upon the highway, if the animal was traveling under his charge in a proper manner and he used ordinary care to prevent such escape ; but if a horse of ever so peaceful a disposition is left by the owner upon the highway unattended and unfastened, the jury may hold him liable for injuries committed by it in running away, or otherwise acting according to its well-known nature, even though provoked thereto by a stranger. Thus, one who leaves a horse loose and unattended in a city street is responsible for injuries done by the horse running away, although that might not have happened but for the malicious act of a stranger in frightening it and although, after the horse began to run, its owner did his best to stop him.' ] [1]

[That is the rule of common sense.] [2] If a man has a horse capable of running at all and leaves it unattended in a public street, where it is liable to be started by malicious or careless boys or by any of the accidents that are always occurring upon the street, I think the jury would be justified in finding him guilty of negligence, and probably not justified in finding any other way. Now that, as said in these cases, is without regard to the disposition of the horse, because accidents will happen to the best natured horse in the world that may cause him to run away and do damage.

In this case it appears that the defendant had this horse but

two weeks. It was represented to him as being a quiet horse which would stand anywhere, but he did not buy it on that representation; he was not so satisfied by that that he was willing to risk purchasing it but took it on trial and had it for two weeks, so that it was comparatively a strange horse to the defendant, and even if it were justifiable to leave his own horse, however well he may have known it, [however peaceable he may have known it to be, here was a horse whose disposition he, in the nature of things, could not fully know.] [3] Was it not negligence on his part to leave that horse standing on a public street, unattended?

Then you come to the question of damages. . .

The husband is entitled to receive, on his part, compensation for the moneys paid, or for which he may be liable to the physician for medical attendance, for medicines, for nursing during the time that she was sick, and for the loss of her services; because though she is not entitled to her services, he is. And the services of a wife are valuable to a husband, have a money value aside from the matter of affection which you have no right to estimate in this matter. [But he is entitled to compensation not only for the loss of her labor and services but for the loss of those little amenities of life, the society of his wife during the time of this sickness, up to the time of the bringing of this suit. For anything else he cannot recover in this action, and this suit was brought on the fifth of May, 1890, some two months after this accident occurred; he is entitled to compensation for that, for money expended for physicians, for medicines, for nursing, for the loss of the society of his wife, and for her labor as a housekeeper or whatever she might do."] [4]

Verdict and judgment for plaintiff, J. B. Henry, $225; and verdict and judgment for J. B. Henry and M. A. Henry his wife, in right of said wife, $3,325. Defendant appealed.

*Errors assigned* were (1–4) the portions of the charge in brackets, quoting them; and (5) the whole charge as being partial to the plaintiff.

*W. D. Moore,* with him *J. M. Friedman,* for appellant.

*Francis S. Bennett,* of *Bennett & Hughey,* for appellee.

OPINION BY MR. JUSTICE WILLIAMS, January 13, 1892, in No. 138, Oct. T. 1891.

The defendant drove to the express office on Federal street, in the city of Allegheny, in March, 1890. Turning up to the curbstone in front of the office he alighted from his buggy and went directly inside, leaving his horse unhitched and unattended in the street. Before his return the horse became frightened, dashed along the street at a rapid pace, and ran over Mrs. Henry, who was at the time in the act of crossing the street. She alleges that she was seriously injured. This action was brought to recover damages, resulting from the wounds and bruises received at the time of the accident, and resulted in a verdict in her favor.

The appellant complains that the verdict was rendered under the influence of erroneous instructions, which he has assigned for error. The first of these alleges, that " the court erred in charging that the act of the defendant was not negligence per se, and then reading authorities to show that it was." If the learned judge charged more favorably to the defendant than the authorities justified, he certainly ought not to complain of that. But on examination we do not find the charge fairly open to the criticism made upon it. What the judge did say was, that he was not disposed to say, as matter of law, that the act of the defendant, in leaving his horse unhitched in the street, was negligence ; but that it was evidence, prima facie, of negligence, and put the burden of proof upon the defendant. If there were circumstances which excused or justified his conduct, it was for him to show them. If none such were shown, the fact, unexplained, that he had left his horse, unattended and untied, in a public street of a city, was enough to justify a verdict against him. The authorities read support this view of the effect of the defendant's act, and this is the rule that the learned judge characterized as the rule of common sense.

The second assignment complains, that the characterization, by the learned judge, of the rule which he gave to the jury as the rule of common sense, was equivalent to an instruction that a verdict for the defendant would be against common sense. This is clearly a non sequitur. The law is said to be the perfection of human reason, and to embody the common sense of the people. Every rule of law is, presumably, a common

sense rule. Whether the jury adopt that view of the rules laid down for their guidance or not, they are bound by them. The court declares the law. The jury finds the facts. What the defendant did, under what circumstances he did it, and whether these circumstances relieved him from the charge-of negligence, were the questions of fact on which the jury were to pass. If they found that no circumstance were shown that could excuse the defendant's act, then, under the rule of law which the court gave them, their duty was to find for the plaintiff, and it could do no possible harm that the learned judge, in laying down this rule for their guidance, also commended the wisdom of the rule. Wise or unwise, they are bound by it.

The third assignment is taken out of a sentence which, read together, is unobjectionable. That part of the sentence, which appears in the assignment, is as follows: However peaceable he may have known it to be, here was a horse whose disposition he, in the nature of things, could not fully know." This is treated as in effect an instruction to the jury that, however well the defendant knew his horse, he did not know his horse well; an absurd and contradictory statement. What the judge really said was this : " And, even if it were justifiable to leave his own horse, however well he may have known it, however peaceable he may have known him to be, here was a horse, whose disposition he, in the nature of things, could not know." The judge was contrasting the measure of care necessary to be exercised when using a horse, which one might know to be peaceable and safe, with that which should be exercised when using a horse with whose peculiarities he was not familiar. The defendant had owned the horse he was driving, on the day of the accident, but a short time, and had driven it but little. If he would have been justified in leaving it, as he did, if he had owned and driven it for a long time, and knew it to be safe and gentle, was he not bound to a higher measure of care in driving this horse, which he had so recently bought, and of which he knew so little? This was the thought to which the attention of the jury was being drawn when the sentence was uttered which has been dismembered in this assignment.

The only remaining question relates to the measure of damages in the action brought by the husband, which was tried

with this one. It may be open to some verbal criticism, but it stated the plaintiff's measure of damages with substantial accuracy. The jury was told, that the husband was entitled to recover the moneys he had expended, or become liable to pay, for the medical care and attendance upon his wife during her illness, and for the loss of her services while unable to attend to her domestic duties. The jury was not misled by the verbiage employed by the learned judge, for their verdict was for $225, a sum fully justified by the evidence.

The judgment is affirmed.

In No. 137, Oct. T., 1891.—For reasons given in the opinion now filed, in Henry and Wife v. Klopfer, this judgment is affirmed.