# Commonwealth *v.* Forney, Appellant.

*Criminal law—False pretenses—Elements of—Section 111 of the Act of March 31, 1860, P. L. 410—Case for jury—Evidence—Relevancy.*

The offense of securing money by false pretense under Section 111 of the Act of March 31, 1860, P. L. 410, consists in the actual obtaining of money by means of a false assertion, with intent to

cheat and defraud, of an alleged existing fact or facts, calculated to deceive a person of ordinary prudence and caution, and cannot be established by proof of promises to do something in the future, even though the defendant when making the promises had no intention of carrying them out.

In the trial of an indictment for obtaining money by false pretenses, contrary to the Act of 1860, there was evidence that defendant falsely stated that his company had obtained oil and gas leases which cost it nothing except a royalty and that defendant had contracted to drill a well. There was also evidence that the defendant made false statements as to salaries and commissions paid for the promotion of the company and that in reliance upon these statements the prosecutor paid money to the defendant for stock subscriptions.

Under such circumstances the case was for the jury and a verdict of guilty will be sustained.

Testimony as to false representations will not be excluded on the ground that it had been given in a former proceeding in which defendant had been acquitted.

Under an indictment for obtaining money by false pretense, evidence as to the value of leases purchased is not relevant to an issue raised by the Commonwealth that the defendant misrepresented the price paid for such leases.

Where facts have been shown in sufficient detail for any relevant purpose under the real issue, minute and detailed evidence as to these facts is properly excluded as being irrelevant and immaterial.

*Indictment—False, pretense—Duplicity.*

A statement in an indictment for obtaining money by false pretenses, that the money so received was misappropriated, is mere surplusage and does not render the indictment bad for duplicity as charging also the crime of embezzlement.

*Autrefois acquit—When formal acquittal is a bar—False pretenses—Plea of autrefois acquit and general issue submitted to jury at same time.*

The test in the plea of autrefois acquit is whether the evidence necessary to support the second indictment would have been sufficient to convict on the first. A former acquittal is only a bar where the defendant could have been convicted, on the first indictment, of the charge preferred in the second.

Where the plea of autrefois acquit is traversed by a replication and the general issue is likewise pleaded, it is not error to submit both issues to the jury at the same time, with instructions to first decide the issue upon the special plea, and if they find that issue in favor of the defendant, to ignore the other issue.

The plea that defendant has been acquitted of obtaining money from a different prosecutor, at the same time and by the same misrepresentations, is not a good defense to a prosecution for obtaining money under false pretenses.

Argued March 9, 1926. Appeal No. 130, April T., 1926, by defendant, from judgment of Q. S. Mercer County, January Sessions, 1922, No. 137, in the case of Commonwealth v. Byron Forney. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Indictment for obtaining money by false pretenses. Before EMERY, P. J., 53d Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* among others, were the various rulings on evidence and the judgment and sentence of the court.

*C. E Harrington,* and with him *O. K. Eaton, F. A. Service* and *J. A. Stranahan, Jr.,* for appellant.

*T. C. Cochran,* and with him *L. R. Rickard,* District Attorney, and *L. J. Wiesen,* Assistant District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., April 19, 1926:

The appellant, Byron Forney, was convicted of the crime of obtaining $100 from H. E. Montgomery by means of certain false pretenses relative to the manner in which The Forney Mutual, a certain oil and gas company, had been organized and was being operated.

When the case was called for trial counsel for appellant moved to quash the indictment, which motion was overruled by the trial judge and two pleas, (1) autrefois acquit and (2) not guilty, were then entered. The Commonwealth traversed the plea of autrefois

acquit by a replication and joined issue on both pleas. At the close of the testimony for the Commonwealth counsel for appellant moved the court to direct the jury to find for him upon his plea of autrefois acquit. This motion was refused and the court submitted the issues upon both pleas to the jury at the same time with instructions to render separate verdicts on each issue, and explained to the jurors that if they found in favor of the appellant on the plea of autrefois acquit it would not be necessary for them to pass upon his guilt or innocence.

The jury returned two verdicts, in one of which they found against the defendant on his plea of autrefois acquit and in the other found him guilty on the general issue. Whereupon counsel for appellant filed motions in arrest of judgment and for a new trial which were overruled and sentence pronounced. Upon appeal to this court the court below granted a supersedeas.

The assignments of error are sixteen in number and specify various alleged errors on the part of the trial judge, which, for the purposes of this opinion, may be grouped as follows: (a) Refusal to quash indictment; (b) Submitting issue on special plea of autrefois acquit to jury along with the general issue; (c) Errors in admission and rejection of evidence; (d) Errors in denying certain points submitted on behalf of defendant, and in the general charge; (e) Overruling motions in arrest of judgment and for a new trial.

Before taking up in detail a discussion of the assignments of error it should be pointed out that the uncontroverted testimony shows that the defendant, a resident of the city of McKeesport, Allegheny County, and Walter L. Riggs of the same place entered into an agreement under date of December 27, 1919, for the formation of a partnership under the name of "The Forney Mutual" for the purpose of drilling for oil and gas. In the agreement it was set forth, inter alia, that the defendant was the holder of five certain oil

and gas leases on various lots in said city which he undertook by said agreement to hold in trust for said Forney Mutual.

It was further recited that the defendant and a number of other persons had associated themselves together to form a partnership, "in which their associates and assigns may be admitted ...... for the purpose of drilling for oil and gas, and in the furtherance of such purpose to buy, sell and hold real estate and leases on real estate," etc.

By the fourth paragraph of the agreement the capital stock of the partnership was fixed at $175,000, divided into 1750 shares of $100 each. Under the terms of the agreement Riggs was designated as trustee, meaning, as explained in the defendant's testimony, that Riggs was to represent "the shareholders, the individual shareholders" and that the defendant was to represent "the shareholders as a whole." By the eighth paragraph of the agreement it was provided as follows: "Eighth: The said Byron Forney shall receive in payment for the oil and gas leases above set forth the sum of $10,000 and he shall receive for his services rendered and to be rendered in organizing and financing this partnership Fifty shares of the capital stock of the partnership. That said Byron Forney shall further receive for the sale of the stock of the partnership a sum equal to fifteen per cent of the par value of the stock sold by him."

In the ninth paragraph it was provided that Riggs should receive for his services in representing the shareholders three shares of the capital stock of the partnership, which should be in full payment for all his services, and that he should receive no salary. This stock was placed upon the market for the purpose of securing funds to carry on the operation and drill wells, and H. L. Miller, a resident of Grove City, Mercer County, was appointed as one of the selling agents. In all 360 shares of stock were sold for

$36,000, of which amount $10,000 were retained by the defendant for said leases in addition to the said fifty shares of stock; $11,607.50 were retained by the defendant and his agents for "stock selling commissions, miscellaneous salaries and organization expense," the defendant's commission being at the rate of 15 per cent. for stock sold; and $2,336.09 were applied to office and traveling expenses, etc., leaving a balance of $12,056.41 in the treasury. No wells were ever drilled. Under date of July 1, 1920, the Forney Mutual advised its stockholders that "the said field is now a thing of the past" and asked them to decide whether the said balance should be applied toward drilling a well elsewhere or should be divided pro rata among the shareholders. A large majority having voted to have the money divided, it was so distributed and each share of stock received as its pro rata amount $33.49. The specific charge in the indictment grew out of the fact that the defendant went to Grove City, Mercer County, on February 25, 1920, and was taken by the said Miller to the Overland garage, where a number of prospective purchasers of said stock had assembled, and it is charged by the Commonwealth that the defendant induced the prosecutor in this case, H. E. Montgomery, and several other persons, to purchase stock in the said partnership by means of certain false pretenses, through which he was induced to give his check for $100 to the said Miller several days later for one share of stock in said partnership, a certificate for the same being delivered to him by said agent.

In considering the alleged false pretenses charged in the indictment and testified to at the trial it is important to keep in mind that the criminal offense of securing money by false pretense under section 111 of the Act of March 31, 1860, P. L. 410, consists in the actual obtaining of the same by means of the false assertion, with intent to cheat and defraud, of an alleged existing fact or facts, calculated to deceive a person of ordi-

nary prudence and caution, and cannot be established by proof of promises to do something in the future, even if the jury should find that when making the promises the defendant had no intention of carrying them out: Commonwealth v. Mauk, 79 Pa. Superior Ct. 153, 158. Looking at the promises as testified to by H. E. Montgomery, the prosecutor, and as corroborated by other witnesses called in behalf of the Commonwealth, we find that one of the representations alleged to have been made by the defendant was that the said partnership had obtained five leases which cost it nothing except the usual one-eighth royalty to the land owner, and that while other people were paying salaries and commissions for promotion and stock selling purposes there were no salaries and no commissions in the Forney Mutual. Other pretenses alleged to have been made were that all the defendant was to get for his services was ten shares of stock in each well; that defendant had contracted for the drilling of a well; that the material was in McKeesport at the time and he could have it on the ground by nine o'clock the next morning and get the wells drilling at once.

We are of opinion that these statements, if made, were assertions of alleged existing facts relative to the terms and conditions under which the partnership had been organized, the cost of its leases, the compensation to which defendant was entitled, and the existing status of the enterprise. The testimony for the Commonwealth indicated that the defendant had made other representations to the effect that any money which might be left over after the wells were drilled would go back to the stockholders pro rata, and that in the event of no drilling being done the money would be paid back dollar for dollar as there was no other expense whatever connected with the project. These last mentioned representations seem to us to be in the nature of such promises and predictions with respect to the future as would not support an indictment for

obtaining money by false pretenses. Referring, however, to the first class of statements above mentioned it is obvious that they did not truthfully state the existing facts with relation to the cost to the partnership of the five leases nor the extent of the compensation which the defendant was to receive under the express terms of the partnership agreement. The defendant denied that he had stated that the leases would cost the partnership nothing but the one-eighth royalty to the land owner, but admitted that he had stated that arrangements had been made for drilling a well.

Defendant also denied that he had told the prospective purchasers of stock that the only compensation he was to receive was the fifty shares of stock and denied that he had told them he was to be paid no commission, wages or salary. The making of the promises and predictions above mentioned was likewise denied. On cross examination the defendant admitted that he did not explain all the terms of the agreement between Riggs and himself and stated that he did not recall whether he had the contract with him. The defendant further admitted that he did not tell the prospective investors that he was getting $10,000 for the leases and did not tell them that he was getting fifteen per cent. for selling the stock.

This conflicting testimony raised issues of fact necessarily for the jury and they were submitted to the jury by the learned trial judge under instructions that, in order to make out the crime of false pretense, the Commonwealth must show beyond a reasonable doubt that the defendant made false representations as to existing facts; that these false representations were such as were calculated to deceive a person of ordinary prudence and caution; that they were made with the intent to cheat and defraud; that the prosecutor paid out his money on the faith of these representations; that it is the duty of a person to whom such repre-

sentations are made in the exercise of ordinary caution to use every means obtainable to ascertain the truth of the representations; and that representations relating to a future state of things and future acts would not sustain the indictment even if they were shown to be false.

We are of opinion that the issues of fact were fairly submitted to the jury and that the law applicable to the main issue in the case was correctly explained to the jury by the trial judge.

Referring now to the specific questions raised by the assignments of error, we are of opinion that the trial judge committed no error in refusing to quash the indictment. The first ground assigned in support of the motion to quash was that the indictment alleges that the defendant, devising and intending to cheat and defraud the prosecutor, represented that he "had organized and was representing an oil and gas company called The Forney Mutual, and did then and there solicit said H. E. Montgomery to purchase shares therein," yet there is no allegation in the indictment that said representations were false. It is sufficient to say that the Commonwealth did not contend that the representation that defendant had organized and was representing an oil and gas company was a false representation. With respect to the other assertions and representations it is averred in the indictment that they were falsely and designedly made. Another ground for quashing the indictment was based upon the contention of counsel for the defendant that the alleged pretenses, including the pretense "that said company already had its leases and that they cost nothing and were to cost nothing" related to a future state of things. We have already pointed out that in our opinion several of the material representations charged in the indictment related to alleged existing conditions. Again it is contended that the averment in that portion

of the indictment which negatives the alleged pretenses by charging that in truth and in fact the defendant had arranged that he and others were to receive large salaries, commissions, payments and expenses out of the assets of said company, ("which arrangements then and there contemplated said Byron Forney personally out of the $36,000 of money paid into said company by said H. E. Montgomery and others receiving the sum of $10,000 for said company's leases; $5,000 for so-called salaries; and $5,400 for commissions, or a total of $20,400, and of others receiving the additional sum of $3,543.59, which was the actual misappropriation of the assets of said company by said Byron Forney,") amounts to and constitutes a charge of embezzlement thereby making the indictment bad for duplicity.

We cannot see that there is any foundation for this contention. The language above referred to does not charge the crime of embezzlement but merely sets forth in detail what application was made by the defendant of the proceeds of the sales of stock. This particularity may not have been necessary and at the most is merely surplusage. We also think that the description of the check alleged to have been obtained from the prosecutor, together with the averment that it "was afterwards paid," was sufficient.

With respect to the plea of autrefois acquit we understand the contention of counsel for the defendant to be that the trial judge should have disposed of it by granting the defendant's motion, made at the close of the Commonwealth's testimony, to direct the jury to find for the defendant upon this special plea, or, if that position be not tenable, then that the court should have directed that the jury be first sworn to try the issue arising on that plea alone; in other words, that it was error to submit the issue on the special plea and the

general issue to the jury at the same time although the jury was directed to and did render separate verdicts on each issue.

This plea was based upon the allegation that the defendant had been tried about a year previous to the present trial in the Court of Quarter Sessions of Mercer County at No. 135, January Sessions, 1922, for the offense of obtaining the sum of $100 from Charles McDougall by the same pretenses as those set forth in the present indictment, and that in said former case he had been found not guilty by direction of the judge who tried that case.

In substance it was alleged that Montgomery, the prosecutor in the present case, and McDougall, the prosecutor in the former case, were both present at the meeting in the Overland garage and that the representations which induced Montgomery to purchase his stock were identical with those alleged to have induced McDougall to purchase a share of stock in said partnership. It was contended in behalf of the defendant that, as he had been acquitted of obtaining McDougall's money by false pretenses, he could not be convicted of obtaining Montgomery's money by means of the same false pretenses; hence the interposition of the plea of autrefois acquit as a bar to the prosecution of the present indictment. Did the court below err in refusing defendant's motion to instruct the jury to find for him upon his special plea? In Solliday v. Commonwealth, 28 Pa. 13, 14, our Supreme Court, speaking of the proper method of disposing of a plea of former acquittal or former conviction, said: "If the representative of the Commonwealth traverses the plea by denying that the former conviction was for the same offense, and thus forms an issue in fact, it must go to a jury, and no judgment can be given in the case until that question is disposed of. No matter how clear the opinion of the court may be against the defendant,

nobody but the jury can decide an issue like that. The judge may influence the verdict—in some cases he may and ought to control it—but he cannot pronounce it."

The judgment in the case cited was reversed, not because the court below directed that the jury be sworn to try both issues at the same time, but because they rendered no verdict upon the plea of autrefois convict, their only verdict being one finding the defendant guilty on the fourth count of the indictment. An inspection of the record in the instant case shows that the defendant's plea of autrefois acquit was in common law form rather than the short statutory plea authorized by section 30 of the Act of March 31, 1860, P. L. 437, and that the district attorney did not demur thereto but traversed the plea by a replication setting forth, inter alia, that the offense charged against the defendant in the present indictment was not the same offense as was charged against him in the indictment upon which he was acquitted, etc.

In the case of Commonwealth v. Greevy, 75 Pa. Superior Ct. 116, the defendant was convicted upon an indictment charging involuntary manslaughter. When called for trial he filed a special plea in bar, in common law form, setting forth that he had been indicted upon a charge of murder for the same killing, upon which indictment he had been acquitted. The Commonwealth demurred to the plea and the prisoner joined issue on the demurrer. The court entered judgment in favor of the Commonwealth upon the demurrer, to which the defendant excepted. The defendant then entered a short plea of autrefois acquit in the form authorized by the said Criminal Procedure Act of March 31, 1860, and the plea of not guilty. The Commonwealth joined issue upon these pleas and these issues were submitted to the same jury. The jury rendered a verdict of guilty but did not say anything on the question of former acquittal and the defendant

moved to arrest the judgment, which motion the trial court overruled. Upon appeal to this court it was held that the judgment in the court below should be reversed because judgment should have been entered in favor of the defendant on the demurrer to his special plea, and because there was no verdict upon the outstanding short plea of former acquittal. The Supreme Court, upon application of the Commonwealth, allowed an appeal, Commonwealth v. Greevy, 271 Pa. 95, from the judgment of this court and reversed because, among other reasons, it was of opinion that the defendant was not entitled to judgment upon his special plea, and, further, because the defendant had a decision on his plea of former acquittal by the trial court which had heard and decided it upon the demurrer and allowed him an exception to its ruling thereon, and defendant therefore could not by filing the same plea over again in short form require it to be retried. It is pointed out by our Supreme Court that all that has been decided by the authorities in this state upon this point is that the defendant is entitled to a decision on his plea of former acquittal before a jury can properly consider the issue arising under his plea of not guilty. In the instant case it is to be noted that no objection was made at the close of the testimony to the submission of both issues to the jury at the same time and it is also proper to observe that the jury was specifically instructed by the court to pass upon the special plea before it took up the question of the guilt or innocence of the defendant of the offense charged in the indictment.

The ninth point submitted in behalf of the defendant and affirmed by the court reads as follows: "Ninth: The defendant has, in addition to the plea of 'not guilty,' pleaded that he has been once acquitted of the crime charged. It is the duty of the jury, before considering whether the defendant is guilty or not guilty

in the present case, to decide whether the defendant has in fact been once found 'not guilty' of the charge contained in the present indictment. If the jury decide that the defendant has been once tried and found 'not guilty' of this present charge, then it would be your duty to find for the defendant, and that would be an end of the case without any consideration as to the question of the defendant's innocence or guilt in the present case. If you so find, you will report: 'We find for the defendant on his plea of former acquittal.' "

In the early case of Commonwealth v. Demuth, 12 S. & R. 389, 391, Chief Justice Tilghman criticized the practice of submitting the issues upon pleas of autrefois acquit and not guilty to the jury at the same time in the following language: "The jury ought not to have been charged with both these issues at once, because, if they found for the defendant, on his plea of autrefois acquit, no further trial ought to have been had; a former acquittal was a bar to the present indictment. But as they were charged with both, they should have given a verdict on both. Judgment could not go against the defendants, until there was a finding against them on the plea of autrefois acquit." The judgment in that case was reversed because the jury found only a verdict of guilty and gave no answer upon the issue of former acquittal. It is probably better practice where there is a replication to a plea of former acquittal or conviction to submit this issue alone to the jury before submitting the issue on the plea of not guilty, as it is quite possible that there may be no occasion for submitting the latter issue. The propriety, however, of submitting both issues to the jury at the same time, under proper instructions, has been at least tacitly recognized by our decisions where the special plea has been traversed, and we are of opinion that such procedure does not constitute reversible error. It

is clear that the trial judge committed no error in the present instance by refusing the defendant's motion to direct the jury to find in his favor on his plea of autrefois acquit. It was his duty to submit the issue arising under that plea to the jury.

The next inquiry arising upon this branch of the case is whether the court below was justified in sustaining the finding of the jury against the defendant on his special plea. The plea of autrefois acquit is of mixed nature, part matter of record and part matter of fact: Commonwealth v. Montross, 8 Pa. Superior Ct. 237. "The test in the plea of autrefois acquit is whether the evidence necessary to support the second indictment would have been sufficient to convict on the first: Commonwealth v. Hazlett, 16 Pa. Superior Ct. 534; Commonwealth v. Brown, 28 Pa. Superior Ct. 296; Commonwealth v. Allegheny V. Railway, 14 Pa. Superior Ct. 336." As applied to the case at bar the test is whether the evidence necessary to convict the defendant of having obtained $100 from H. E. Montgomery by false pretenses would have been sufficient to convict him of having obtained $100 from Charles McDougall by the same pretenses. A former acquittal is only a bar where the defendant could have been convicted on the first indictment of the charge preferred in the second: Hilands v. Commonwealth, 114 Pa. 372.

The principles stated in the case of Commonwealth v. Rockafellow, 3 Pa. Superior Ct. 588, are applicable to this case. The defendant in the case cited, a banker, was indicted for having received from Anna Maria Meier, a depositor, $700, with knowledge that he and his bank were then and there insolvent. At the trial his plea of autrefois convict was based upon the fact that he had been indicted, convicted and sentenced for having "under the same circumstances and with the same knowledge of insolvency as in the present case

and a little more than an hour earlier on the same day received from Isaac Long, a depositor, $4,600.''

On demurrer the trial judge held that the plea was sustained by these facts and entered judgment for the defendant. Upon appeal to this court that judgment was reversed. In the course of the opinion it is shown that the receipt of a deposit under the circumstances described is under an implied false representation and it is then remarked: ''Yet it cannot be said that the obtaining of money from A. by a false pretense includes the obtaining of money from B., by the same false pretense, by reason of the fraudulent purpose common to both. As well might it be held that a larceny of the goods of A. includes a larceny of the goods of B. by reason of the felonious purpose common to both. ....... The argument in support of the appellee's contention assumes that the statutory offense consists chiefly in the banker's knowledge of his insolvency. His insolvency, however, is but a misfortune, not a crime. Neither this, nor his knowledge of it, can of itself work harm to the public. It is only when an insolvent banker receives money from a depositor, that the mischief arises against which the statute was designed to protect the public. The two elements—knowledge of the insolvency, and the receipt of a deposit—must coexist to constitute the offense.'' In the present case the argument of the appellant throughout the trial in the court below and in this court assumes that the making of false pretenses constitutes the statutory offense. Such is not the case as the real offense consists in obtaining, inter alia, money by means of the false pretenses, and three elements must be shown in combination, viz: the false pretenses, obtaining money or valuable securities thereby, and an intent to cheat and defraud. The finding of the jury on the issue arising under the special plea was arrived at through the application of sound principles of law

to the facts involved and the trial court was fully justified in declining to disturb it.

The case at bar is distinguishable from the case of Commonwealth, ex rel., v. Veley, 63 Pa. Superior Ct. 489, relied upon by counsel for appellant. In that case the defendant was indicted and acquitted of the crime of involuntary manslaughter in causing the death of two women by reason of gross negligence in the management and control of a concrete dam, the breaking of which resulted in the drowning of a number of persons and the destruction of a large amount of property. Subsequently he was charged with involuntary manslaughter in causing the death of a third woman which occurred in the same disaster. There was no dispute about the fact that the deaths of the three women resulted from the same alleged negligent act and, upon habeas corpus proceedings, the relator was discharged. When the elements of the respective crimes essential to the sustaining of an indictment are considered the distinction is apparent. In the case cited the indictable element was the negligence but in this case the indictable element was not the making of the false pretenses but the obtaining of money thereby.

The eighth and ninth assignments of error allege that the court below erred in admitting the evidence of the prosecutor and the said Charles McDougall, prosecutor in the former case. Counsel for the defendant objected to these witnesses testifying to anything to which they had testified at the former trial upon the ground that, by reason of the interposition of the defendant's special plea, they became incompetent to testify in this case to the same false pretenses as those covered by their testimony in the former case. The trial judge was clearly right in overruling these objections.

The tenth and eleventh assignments of error are based upon the exclusion of defendant's offer to prove

the value of the leases. The issue did not relate to the value of the leases. The Commonwealth did not contend that the defendant had misrepresented the value of the leases but rather that he had misrepresented the price which the partnership was paying for them, and the offer was therefore irrelevant. In this connection it should be noted that the court below affirmed the defendant's seventh point to the effect that there "could not be any cheating or defrauding of the prosecutor if the stock he purchased from the defendant was reasonably worth the amount he paid for it," an instruction at least as favorable to the defendant as he was entitled to have under the issue arising under the indictment.

The twelfth and thirteenth assignments of error are predicated upon the exclusion of defendant's offer to show in detail the vote by the shareholders upon the options offered by the Forney Mutual to them with respect to the disposition of the $12,000 remaining in the treasury, and to show in detail the expenditures of the balance of the $36,000 received from stock sales, for the purpose, as stated by counsel for the defendant, of showing that there was no false pretense and that the purchasers were not deceived and to answer the charge that there had been actual misappropriation of the funds. These facts had already been shown in sufficient detail for any relevant purpose under the real issue. The evidence was excluded upon the ground that it was irrelevant and immaterial and in this ruling we find no error.

Other assignments of error are based upon the refusal of the court to direct a verdict of not guilty at the close of the Commonwealth's case and the refusal of defendant's 13th and 22d points. The thirteenth point requested binding instructions for the defendant upon his plea of former acquittal and the twenty-second point asked the court to instruct the jury that "under all the evidence in the case the verdict of the jury

should be not guilty.'' These points were refused and not read. The issues arising under both pleas were for the jury and these assignments are accordingly dismissed. With respect to the contention of counsel for the defendant that a new trial should be directed by reason of errors in the general charge and in answers to points submitted on behalf of the defendant, it is sufficient to say that an examination of the charge and answers to the twenty-one points submitted convinces us that the general charge was impartial and adequate, particularly in view of the numerous requests submitted in behalf of the defendant and affirmed by the trial judge, and indeed that the answers to some of these requests were more favorable than the defendant was strictly entitled to receive. The suggestion that the court, by affirming the 16th and 17th points, (which quoted certain of the representations charged in the indictment and asked the court to instruct the jury that they related to a future state of things and future acts and would not be sufficient to warrant a conviction of the crime charged), practically withdrew the whole case from the jury, overlooks the fact that there were other pretenses set out in the indictment but not quoted in the points which related to an existing state of facts and were sufficient to sustain the conviction. We are of opinion that the court below did not err in overruling the defendant's motions in arrest of judgment and for a new trial.

A careful consideration of all the assignments of error leads us to the conclusion that the judgment and sentence should be affirmed.

The judgment is accordingly affirmed and the record remitted to the court below, and it is ordered that the defendant appear in that court at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.