## Commonwealth *v.* Mendola, Appellant.

Argued October 1, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. Harold Flannery,* with him *John H. Dando* and *Frank J. Flannery,* for appellant.—It is barely possible for defendant, after proper instructions, to have been guilty of either murder or manslaughter as a principal (though highly improbable since there is no evidence of participation in the act), but he could not have been guilty of any crime as accessory: Com. v. Minnich, 250 Pa. 363; Buck v. Com., 107 Pa. 486.

The court erred in quoting extracts from appellate court decisions asserting conclusions of guilt in fact and in law, as though arising definitely out of the case at bar.

The court erred in its failure to review any of the testimony: Goersen v. Com., 99 Pa. 388; Meyers v. Com., 83 Pa. 131; Com. v. Kaiser, 184 Pa. 493; Com. v. Ronello, 251 Pa. 329; Com. v. Principatti, 260 Pa. 587.

*Thomas M. Lewis*, District Attorney, with him *Herman J. Goldberg*, Assistant District Attorney, for appellee.—The trial judge did not err in refusing to admit the record of conviction of manslaughter of coprincipal in crime: Com. v. Heffelfinger, 82 Pa. Superior Ct. 351; Com. v. Prescott, 284 Pa. 255; Com. v. Winter, 289 Pa. 284.

Detached portions of the charge in a murder trial are not ground for reversal, where such remarks, taken in connection with the context, were harmless: Com. v. Meyers, 290 Pa. 573; Com. v. Johnson, 279 Pa. 40; Com. v. Millien, 291 Pa. 292.

The trial judge did not err in quoting statutes and decisions of the court in its charge to the jury: Henry v. Klofer, 147 Pa. 178.

The review of the testimony herein was proper and sufficient: Com. v. Kaiser, 184 Pa. 493; Wally v. Clark, 263 Pa. 322.

OPINION BY MR. JUSTICE WALLING, November 26, 1928:

Steve Mendola, the defendant, tried upon an indictment charging him with murder and voluntary manslaughter, was convicted of the latter and from sentence imposed thereon brings this appeal. The parties here concerned were members of the United Mine Workers of America and, during a coal strike in the winter of 1928, held conferences, inter alia, at the district offices in the Miners Bank Building, at Wilkes-Barre. August Lippi, an officer of the union, resided at Pittston, as did

Sam Bonita, Adam Moleski and the defendant, members and officers in Local No. 6 of the union. On the evening of the 15th and the morning of the 16th of February, 1928, the three last named went in search of Lippi to arrange for a conference. Learning of their desire, he left word for them to meet him at the offices in Wilkes-Barre on February 16th, at ten o'clock. This they did, being driven over by Peter Reilly. The defendant, although not a member of the grievance committee, went with the other two who were members. They arrived at the offices and remained a short time in the reception room when Lippi came out and invited them into the conference room, where they found three or four other members of the union, among them Frank Agati, with whom Bonita had previously had harsh words. Bonita, speaking for the committee, asked that a conference be arranged with Mr. Morris, superintendent of the Pennsylvania Coal Company, that a scale of wages might be agreed upon and work resumed. At this juncture, Agati arose from his seat, uttered some angry words and shook his finger at Bonita and, according to defendant's contention, struck him. The Commonwealth denied that any blow was struck, or attempted. In any event, Bonita, with a revolver concealed in his overcoat pocket, shot and killed Agati. He then drew the weapon and fired four additional random shots. The contention that Agati fired one shot after he had received the fatal wound is discredited by the fact that no gun was found in the room where he fell or on his person. The shooting caused a panic and all hurried from the offices, except Agati, who was rushed to a hospital, where he immediately died. Bonita and the defendant fled from the building and the latter, when arrested soon after, had in one overcoat pocket the empty gun with which the shooting was done and in another his own loaded revolver, and also had on his person extra cartridges. There were circumstances supporting the Commonwealth's contention that Bonita and the defendant were acting in con-

cert and entered the offices in question intending to com-
mit unlawful violence therein, and that the latter was a
principal in the second degree to the homicide committed
by the former. The jury adopted that view so far as to
convict the defendant of voluntary manslaughter and he
cannot complain because the evidence may have sug-
gested a higher degree of crime.

None of the assignments of error can be sustained.
No possible harm resulted from the exclusion of the
record showing Bonita's conviction of voluntary man-
slaughter. Being present at the commission of the crime
and charged as a participant therein, the conviction as
an accomplice was no excuse for him. In other words,
where two join in the commission of a crime, neither
can escape because of the conviction of the other.
Bonita's conviction might have helped the Common-
wealth as an answer to the contention that he shot in
self-defense. True, he was not convicted of a malicious
killing; neither was the defendant. The killing of Agati,
by Bonita, being admitted, the important questions at
this trial were as to defendant's participation therein
and, if so, the degree of his guilt.

In charging the jury the trial judge read section 44
of the Criminal Procedure Act of March 31, 1860, 1
Purdon's Digest (13th ed.), p. 1043, that: "If any per-
son shall become an accessory before the fact, to any
felony, whether the same be a felony at common law, or
by virtue of any Act of Assembly now in force or here-
after to be in force, such person may be indicted, tried,
convicted and punished in all respects as if he were a
principal felon." As the defendant was present at the
commission of the crime and indicted as a principal, this
was unnecessary, but harmless. A defendant may be
both an accessory before the fact and also a principal
(Bishop's New Criminal Law, vol. 1, section 664), and
the indictment under the statute above quoted, is the
same whether he is the one or the other or both. The
statute enables the Commonwealth to disregard the dis-

tinction between a principal and an accessory before the fact. See Brandt v. Com., 94 Pa. 290; Com. v. Heffelfinger, 82 Pa. Superior Ct. 351; Com. v. Bradley, 16 Pa. Superior Ct. 561, 565.

Defendant being a principal and tried as such, the rule as to the guilt of the principal being shown before an accessory can be convicted was inapplicable. The trial judge correctly instructed the jury to the effect that the defendant could not be convicted except upon a finding that he joined with Bonita in the felonious killing of Agati. In the course of the charge, the trial judge read extracts from appellate court decisions in substance that parties who join in the commission of a felonious homicide are all guilty regardless of who actually inflicted the fatal wound. This is undoubtedly sound law, and reading it to the jury was not error: Henry v. Klopfer, 147 Pa. 178. The use, however, of other cases to illustrate the principles stated in the charge, while not reversible error, is a practice to be discouraged. In Pointer v. United States, 151 U. S. 396, 416, the rule is stated thus: "If in charging a jury a judge chooses to employ the words of others in order to convey the exact thought in his own mind, or if he prefers, for purposes merely of illustration, to read from the opinions or judgments of other courts, we cannot hold that such practice, although not to be encouraged, is, in the absence of a statute prescribing a different rule, ground for the reversal of the judgment of the trial court. If a judgment should in any case be reversed upon such ground, it should only be where it appears that the jury has been misled by the particular mode in which they were charged to the prejudice of the substantial rights of the accused." There is no objection to reading relevant statutes or settled legal rules as part of the charge, but the reading or recital therein of facts involved in other cases, may tend to confuse or mislead the jury and should generally be avoided.

Other alleged errors are the failure of the trial judge to comment on the testimony of the witnesses and insufficiency of the charge on the law of self-defense. The charge defined the various degrees of homicide and accurately stated the law applicable to the case, also the contentions of the parties, and stated, in effect, that if Bonita fired the shots in self-defense, the defendant should be acquitted. At the conclusion of the charge defendant's attorney said "No" to the judge's request if there was anything he might add. Thereby the defendant took his chances of the verdict and cannot now complain of mere inadequacy of the charge as to self-defense or of failure of the judge to comment upon the testimony of witnesses: Com. v. Pava, 268 Pa. 520, 525; Wally v. Clark, 263 Pa. 322; Com. v. Razmus, 210 Pa. 609. "Where counsel for defendant fails to ask further and fuller instructions or for corrections in the charge, although opportunity is given him, he cannot, on appeal, complain of error in the statement of facts by the trial judge either on the ground of inaccuracy or insufficiency": Com. v. Thomas, 275 Pa. 137. Mr. Justice SCHAFFER, speaking for the court, in Com. v. Winter, 289 Pa. 284, 297, says: "As a general rule, in a murder case, where, at the conclusion of the charge, the court asks counsel if they desire further instructions, and no further request is made, questions not then raised will not be considered on appeal"; citing Com. v. Bryson, 276 Pa. 566. To like import are Com. v. Varano, 258 Pa. 442; Com. v. Washington, 202 Pa. 148. The rule being so held in cases of capital conviction there is stronger reason for it where, as here, the conviction is of manslaughter only.

The judgment is affirmed and the record is remitted that the sentence may be complied with.