Commonwealth *v.* Conroy and Kline, Appellants.

Argued March 6, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Lemuel B. Schofield,* for appellants.

*John H. Dando,* and with him *Thomas M. Lewis* and *M. S. DePierro,* for appellee.

Opinion by Cunningham, J., July 14, 1933:

Appellants were tried and convicted on two indictments charging false pretense. The substance of the charge upon which the first indictment was based was that appellants falsely represented to Elizabeth Restenberger, the prosecuting witness, that they had searched the records for encumbrances against six adjoining and improved properties on Hanover Avenue in Allentown, and that these properties were free and clear of all encumbrances, whereas in fact they were encumbered, and known to appellants to be encumbered, with mortgages, aggregating $31,500; and that Mrs. Restenberger, relying on these representations, transferred to appellants two houses belonging

to her in Hazleton, Pa., and paid them $12,000. The second indictment grew out of charges that similar false representations were made as to a property located on Gordon Street, Allentown, whereas this property was encumbered with mortgages in the amount of $25,000; and that in reliance upon these representations, the prosecutrix gave appellants $4,500 together with a deed to her home in Freeland. The two appellants were tried jointly and convicted on both indictments. These appeals have been taken upon the ground of alleged errors in the charge and the exclusion of certain offers of testimony.

The Commonwealth relied for conviction upon the testimony of Mrs. Restenberger, her daughter Daisy, and her son Thomas. According to their story, appellants came to their home in Freeland on April 8, 1930, explained that they were real estate agents in the City of Allentown, and attempted to interest them in the purchase of property in that city. The Restenbergers entertained their proposals, and shortly thereafter, at the request of appellants, went to Allentown where they were shown certain unimproved real estate. Mrs. Restenberger then informed appellants she was interested only in property which would produce an income; toward the end of May, 1930, they were again taken to Allentown to look at an apartment house. Mrs. Restenberger on June 4th tentatively agreed to purchase this property and gave a check for $1,000 for the purpose—as Conroy stated—"of clearing up some small notes" against it. On June 6th she gave a second check for $12,000 to be applied toward the purchase price, but shortly thereafter was informed the deal could not be put through, because the property was so heavily encumbered. Conroy, however, kept the check in his possession. One week later, appellants again called on the Restenbergers and requested them to look at another property which they had in

mind. This was a block of six houses located on Hanover Avenue, Allentown. Conroy told them that he could get them the houses at the price of $4,000 apiece, or $24,000, to be made up by the $12,000 check, which had already been given him, together with an allowance of $12,000 for the exchange of two houses owned by Mrs. Restenberger in Hazleton. Daisy asked Conroy if they would get the properties free and clear, and he said "Yes, that is right." Mrs. Restenberger then asked Conroy if they should get a lawyer to search the titles, to which he replied that he could search the titles as well as any lawyer, adding that he had searched the titles and they were free and clear and the price was $24,000. On June 25th the parties met in Hazleton and Mrs. Restenberger deeded over the two houses which she owned in that city. This deed was drawn to Wm. D. Cassone, Inc., the company in Allentown from whose offices appellants operated.

Meanwhile, about June 20th, appellants had again come to the Restenbergers, told them that Freeland was not the place for them to live, and offered to procure for them a nice home in Allentown. They finally agreed to purchase a dwelling on Gordon Street in the latter city, at a total price of $21,000, to be made up by a cash payment of $4,000, and the exchange of their home in Freeland at a valuation of $17,000. Conroy also informed the prosecutrix that he had searched the title to this property, and that it was free and clear. The sum of $4,000, together with an extra $500 which they were told was to cover decorations of the home, was paid in small sums through the month of July, 1930, and the Freeland property was deeded to Conroy and Kline on the 29th of that month. On that date they were taken to Cassone's office in Allentown, at which time there were present Mrs. Restenberger, Daisy, Conroy, Kline, and the stenographer, Miss

Klingler. Conroy told them it was a rule in Allentown that certain papers had to be signed in order that they might move into their new home, and Mrs. Restenberger thereupon signed a paper which later turned out to be a mortgage upon the property for $10,000. The Restenbergers had no knowledge as to the contents of the paper, which was not read or explained to them; they moved to Allentown on August 1, 1930.

In September, the Restenbergers received a notice that $450, as interest on a first mortgage of $15,000 on the Gordon Street property, was due. They then called up Conroy, who came to their home, told them the notice must be a mistake, and left, taking the notice with him, stating that he would take it up with the mortgagee. The Restenbergers next received a notice with respect to interest on a $5,000 mortgage on one of the Hanover Avenue properties. Mrs. Restenberger called Conroy and stated she thought these houses were clear of encumbrances, to which he replied that this time they must be mistaken, as there was a mortgage of $5,000 against each of the houses. After numerous similar notices, the Restenbergers were called to Cassone's office in February, 1931, at which time they were asked to sign a paper releasing Conroy, Kline, and Wm. D. Cassone, Inc., from any and all claims against them, for a consideration of $500; upon advice of their own attorney, they refused. The properties were finally sold upon the mortgages in August, 1931. It was also shown that appellants kept the deeds to both Allentown properties for recording, and that the Restenbergers received the deed to the Hanover Avenue properties in September, 1930, from Conroy, but not for the Gordon Street property until January, 1931.

On cross-examination it was developed that the Restenbergers had first learned of the mortgages on

the Hanover Avenue properties about July 3, 1930, at which time Conroy admitted there was a $5,000 mortgage against each, but said they need not worry about it since he would take care of the situation for them.

The defense was that Conroy and Kline knew there were mortgages on the properties involved, and that they had fully explained them to Mrs. Restenberger; that the total purchase price of the Hanover Avenue properties was really $54,500, of which $12,000 was to be paid in cash, $12,000 credited for the exchange of the Hazleton properties, and the balance of $30,500 to be represented by the six first mortgages on the properties (five for $5,000 and one for $5,500); and that the total purchase price of the Gordon Street property was actually $42,000, of which $5,000 was paid in cash, $12,000 credited for the exchange of the Freeland home, and the balance of $25,000 represented by two mortgages. Miss Klingler, stenographer and notary public in Cassone's office, testified she had prepared the $10,000 second mortgage on the Gordon Street property, and that it was fully explained to Mrs. Restenberger before she signed it on July 29, 1930. She could not recall, however, that anything was said at that time about the first mortgage of $15,000.

There was evidence, which, if believed, amply supports the conviction of both appellants, and it is not suggested upon these appeals that the case should not have been submitted to the jury. The stories of the Commonwealth and of the defense were directly and positively contradictory upon the question of misrepresentations. Certain facts, however, tended strongly to discredit the story of the appellants. The parties signed no written agreements of sale. As has been pointed out, the grantee received the deed for the Hanover Avenue properties in September, 1930, and the deed for the Gordon Street property only in January, 1931. It contained no reference to the first

mortgage for $15,000. If the purchase price of this property was, as appellants contended, $42,000, it would have been only natural that the purchaser should have been required to assume its payment. Conroy testified the prosecutrix signed a $15,000 mortgage on the property, but this is obviously wrong, as the only first mortgage upon the premises was the original one executed in 1926, and the notary public admitted that only a second mortgage was executed on the settlement day. It was also brought out from Conroy that the Hanover Avenue properties rented at $40 a month; this rental would have yielded prosecutrix no return whatever after mortgage interest, taxes, water rent, and insurance had been paid, despite the fact that she had made it clear she desired a property which would produce income. Moreover, the actions of the appellants in attempting to obtain a release from the prosecutrix of all claims against them, for the sum of $500, tended strongly to operate as a tacit admission of guilt. Obviously, Mrs. Restenberger should have been more cautious in her dealings with the appellants, and she was undoubtedly careless in not reading the $10,000 mortgage before signing it. This fact, however, does not weaken the force of the charge against appellants in view of the positive testimony as to their misrepresentations. It has been decided that it is not a valid defense that common prudence was not used in avoiding imposition: Com. v. Henry, 22 Pa. 253, 256, or that the prosecutor did not read an instrument handed to him by the defendant before signing it: Com. v. Ko Eune, 69 Pa. Superior Ct. 176, 181.

The assignments of error are directed largely to alleged errors in the charge; they will be considered as grouped in the brief for appellants:

(1) It is contended that the trial judge did not give the jury an adequate explanation of the term

"reasonable doubt." We think this objection may be answered by the following quotation from the charge:

"When a citizen, or a person in our midst, that is, a defendant, is charged with having violated the law, the burden is upon the Commonwealth to establish that fact beyond a reasonable doubt. That burden is with the Commonwealth from the beginning to the end. The reason for that is this, that every man is presumed to be innocent until proven guilty. The presumption is the innocence of a defendant. The burden of establishing guilt is upon the Commonwealth, through evidence. How great a burden is that, in a case of this character? To prove the guilt of the defendants, or either one of them, beyond all doubt? Or beyond any doubt? No. But it is to establish their guilt beyond a reasonable doubt, such a doubt as would cause reasonable men to hesitate in coming to a firm conviction of the guilt of the defendants."

Again, at the close of his charge, the trial judge summarized the case as follows:

"Now, gentlemen of the jury, I think that is as far as it seems necessary for me to go in a recital of the facts. It is for you to determine whether this prosecutor parted with her property in Hazleton and $12,000 in cash, as stated in the one indictment, and in the other with her property in Freeland and forty-five hundred dollars in cash, on the false representations of these defendants that the property which she was getting in return was free and clear of encumbrances, and that acting upon those representations she lost her property in Freeland, as well as the property in Hazleton, and her property in Allentown. If you find beyond a reasonable doubt those are the facts, you should bring in a verdict of guilty. If you have a reasonable doubt, that doubt belongs to the defendants, and should be resolved in their favor. They are entitled to the benefit of a reasonable doubt."

Finally, in affirming the third point of the appellants, to the effect that the jury must acquit unless they found from all the evidence that appellants made statements to the prosecutrix which they knew at the time to be false, the trial judge repeated the accusation preferred against the appellants, and concluded by saying: "That is the charge, and you must be convinced of that beyond a reasonable doubt in order to convict."

This charge, in our opinion, fairly and adequately instructed the jury as to the burden on the Commonwealth. Had appellants wished further instructions, they could have obtained them, since ample opportunity was given to add to or correct the charge at its close. It has been repeatedly held that in a case of this character, a failure to explain the meaning of the term is not error where no explanation is requested: Com. v. Berney, 262 Pa. 176, 105 A. 54; Com. v. Taylor, 78 Pa. Superior Ct. 386. The trial judge, however, went far beyond this. He not only repeatedly referred to the burden of proof, but defined the nature of the doubt and emphasized the presumption of innocence in favor of the defendants. In the case of Com. v. Hoskins, 60 Pa. Superior Ct. 230, relied on by appellants, the charge was held to have been inadequate because the only reference to a "reasonable doubt" was not as to the case as a whole, but only as to one item of evidence.

(2) Complaint is made that the trial judge failed adequately to define the elements of the crime. We think this contention is untenable. He not only referred directly to the statute and the indictments, but stated, and repeated several times, the one issue in the case, which was whether appellants had misrepresented to the prosecutrix that the properties which they were conveying to her were free and clear of encumbrances. In this connection, he said:

"Now, it has also been held by our courts that the representation must be known to be false by the one making it, and have been made for the purpose of obtaining money or goods of another, and the latter must have been parted with on the faith and credit of it. That is to say, if you believe the testimony of the Commonwealth, that these men represented that these properties were being conveyed free of liens, you must find that they knew at the time that that was false, and that this prosecutor acting upon that falsity as though it were the truth, was defrauded thereby, or cheated thereby."

This was a succinct statement of the essential elements of the crime of obtaining money by false pretenses, as it has been defined by the statute and the decisions thereunder. See, for example, Com. v. Forney, 88 Pa. Superior Ct. 451; Com. v. Landis, 101 Pa. Superior Ct. 524. It is not correct, as appellants contend, that the jury was instructed to convict if they found defendants had broken a promise to do something in the future. While the witnesses for the Commonwealth testified that appellants told them that the properties would be conveyed to them free and clear of encumbrances, the necessary import of the representations was that the properties were free and clear of encumbrances at the time the statements were made; the testimony is definite that appellants also stated they had searched the titles to the properties and that there were no liens or encumbrances against them at that time. These were concurrent transactions, involving the exchange of properties owned by defendants for properties owned by the prosecutrix, plus additional cash considerations. Under the Commonwealth's testimony, appellants were putting through a sale at the time the bargain was made; there is no pretense that they defrauded the prosecutrix by a promise to do something in the future. The sole issue

was whether they did or did not reveal the existence of the mortgages on their properties. This issue was defined to the jury in a careful and comprehensive charge.

(3) Nor did the trial judge err in rejecting defendants' offer to prove the market value of the properties involved in the transactions. The misrepresentation charged in the indictments was not that appellants misrepresented the value of their properties; it was that they falsely represented that the properties were free and clear of encumbrances.

We think the reasons thus assigned by the trial judge, COUGHLIN, J., for the exclusion of the offer are sound:

"The representation which the defendants are charged with having made, indicated that Mrs. Restenberger was receiving in consideration of her money and properties, accompanying which went a general warranty, properties in Allentown, free of encumbrances and liens, when as a matter of fact she was receiving no properties in Allentown, but the equity in properties in Allentown, that is, the right to redeem that property, the equity of redemption, they being already mortgaged, and heavily so, presently due. Now, therefore, whether the values of the properties were large or small, inflated or deflated, would not be material in the charge against the defendants, although it might indicate either a good deal, or a bad deal, but certainly the value of the properties would not affect the existence of mortgages, any more than the existence of taxes.

"In other words, we are not trying here the question of whether or not a property of a certain value was represented to be of a greater value. That might not be an indictable offense, because that might be a question of opinion, but the question of whether or not a deed to a property was being given, or a deed to an

equity in a property, that, as the court sees it, is the gravamen of proof in the matter.''

A similar ruling was made in Com. v. Forney, supra, a case involving the obtaining of subscriptions to a partnership, falsely represented to have acquired certain oil leases for a nominal consideration. At page 467, this court said:

''The tenth and eleventh assignments of error are based upon the exclusion of defendant's offer to prove the value of the leases. The issue did not relate to the value of the leases. The Commonwealth did not contend that the defendant had misrepresented the value of the leases but rather that he had misrepresented the price which the partnership was paying for them, and the offer was therefore irrelevant.''

(4) It is also asserted that the trial judge stated to the jury as an established fact the contention of the Commonwealth when he said:

''The misrepresentation herein alleged is that these properties were being conveyed free of encumbrances, when as matter of fact they were not, and these defendants knew it, and they so misrepresented in order to get her, the prosecutrix, to convey her property and pay the additional cash.''

This language appears early in the charge, shortly after the court had read the statute, and was plainly intended merely as an explanation of the Commonwealth's position. Immediately thereafter the contention of the appellants was presented and balanced against that of the Commonwealth. Throughout the charge, the trial judge contrasted the two stories and instructed the jury that if they believed the story of the defendants, they should acquit. There is no merit in these assignments.

(5) It is further assigned as error that the trial judge told the jury that Conroy and Kline had executed the deed to the Gordon Street property. It

is true that the court made this statement, and that in fact the deed was made by Conroy and his wife. However, it is immaterial by whom the deed was executed. Both Conroy and Kline were concededly acting in concert throughout the whole transaction, and the deed of the Freeland home given in exchange for the Gordon Street property was made to Conroy and Kline jointly. Evidently this fact misled the judge in an otherwise exemplary charge. Appellants were given full opportunity to correct this misstatement of fact at the close of the charge, but did not do so. If it did not seem important to them at the time, neither would it have seemed so to the jury, particularly as the latter had all the deeds before them.

(6) Appellants had the same opportunity to correct the trial judge in his summary of the evidence of the witness, Kahler, who testified to a conversation with the prosecutrix after the sales, in which she referred to the mortgages on the properties. The court had made no reference to this testimony in the charge, and at its conclusion was asked to do so by counsel for appellants. While referring to the mortgages on the Hanover Avenue properties, the trial judge stated that no mention was made by Kahler of the mortgage on the Gordon Street property. Counsel for appellants could easily have corrected this slip; they had asked that the evidence be detailed and their attention was therefore particularly directed to it. In any event the evidence was of small importance, as the conversation between Kahler and the prosecutrix took place some months after the sales in question. It is an established rule that appellate courts will not consider assignments of error relating to inaccuracies in the statement of the facts by the trial judge, where counsel for defendants do not avail themselves of an opportunity given them at the close of the charge to correct such misstatements: Com. v. Mendola, 294 Pa. 353, 359, 144 A. 292; Com. v. Flori, 300 Pa. 125, 133, 150 A. 290.

While it was not made the subject of an assignment of error, some question is raised in appellants' brief as to the participation of Kline in the crime. We are convinced, however, that there is ample evidence to establish the fact that Kline was equally guilty with Conroy. Kline first conceived the idea of approaching the prosecutrix with the proposition of purchasing the Allentown real estate. He accompanied Conroy on all of his trips and was present at all of the numerous interviews between the parties. As already stated, the deed to the home of the prosecutrix in Freeland was drawn to Kline and Conroy jointly. He testified that after the deals were put through he visited the prosecutrix, not only with Conroy but alone on several occasions, to talk over the properties. Moreover, Kline, as well as Conroy, was named in the release which the prosecutrix was asked to sign in February, 1931. It is true that Kline also testified that he was only Conroy's chauffeur, and was present at the interviews simply because he was invited, but, when pressed upon cross-examination, he admitted he could not say whether or not he was acting as agent with Conroy on these transactions, and Conroy himself stated this to be the case. While Conroy was undoubtedly the leader in the scheme, Kline admittedly was an active partner in whatever took place, and must bear his share of the guilt.

The facts in this case bear a striking similarity to those in Com. v. Landis, supra, and, as in that case, are sufficient to sustain the convictions. Upon examination of the record, we are of opinion that no reversible error was committed upon the trial of these appellants.

The judgments are severally affirmed and it is ordered that each appellant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with

288

his sentence, or any part thereof which had not been performed at the time the respective appeals were made a supersedeas.