Com. of Pa. *v.* Heckman, Appellant.

Argued March 13, 1934.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*L. H. Rupp*, of *Butz & Rupp*, for appellant.

*Julius M. Rapoport,* and with him *John H. Diefen-derfer,* District Attorney, for appellee.

OPINION BY PARKER, J., April 16, 1934:

The defendant having been found guilty and sen-

tenced on four counts in an indictment appealed to this court, assigning as errors the refusal of his motions in arrest of judgment and for a new trial. Two of the counts charged the defendant with repledging securities without the consent or knowledge of the prosecutor who had deposited such property with the Allentown Trust Company as collateral on a loan, contrary to the Act of June 10, 1881, P. L. 107 (18 PS 2881), and the other two counts charged fraudulent conversion of the same property, contrary to the provisions of the Act of May 18, 1917, P. L. 241 (18 PS 2486).

It is necessary to recite the substance of the Commonwealth's testimony for the purpose of disclosing the position of the defendant. On May 19, 1931, the prosecutor, E. A. Wolfe, executed and delivered a demand note for $16,500 to the Allentown Trust Company, pledging as collateral security twenty-four $1,000 first mortgage gold bonds of the Pennsylvania Dixie Cement Corporation. The note and collateral pledged were held by the bank until December, 1931, when the defendant, Charles A. Heckman, being then the secretary and treasurer of the Allentown Trust Company, removed the collateral and delivered it to the Pennsylvania Company for Insurance on Lives and Granting Annuities, at Philadelphia, as collateral security for a large indebtedness which the Allentown bank was then owing the Pennsylvania Company. These securities were pledged, in part on one day and the balance a few days later, upon demand made by the Philadelphia bank for additional collateral to secure the loan made to the Trust Company. The note of May 19, 1931, did not authorize the repledging or rehypothecation of the collateral.

On March 16, 1932, more than three months after the repledging of the bonds by Heckman and while they were held by the Philadelphia bank, Wolfe exe-

cuted a new note to the Allentown bank containing a clause not in the first note, as follows: "The holder hereof is hereby authorized and empowered to rehypothecate at any time all or any part of the securities pledged herewith or which may hereafter be pledged." On June 16, 1932, the Allentown bank was closed by order of the State Banking Department, and on June 17, the Philadelphia bank, to liquidate the indebtedness of the Allentown bank, sold the collateral pledged. On August 20, 1932, after the Allentown bank was closed, the deputy in charge of its affairs credited Wolfe on his note with the amount realized from the sale of his collateral by the Philadelphia bank.

There is not any dispute as to the evidence which we have recited. There was further evidence upon the part of the defendant tending to show that the prosecutor had agreed to the rehypothecation of the stock. This, however, was denied by the prosecutor, and that issue was submitted to the jury which found against the defendant.

Appellant, in support of his motion in arrest of judgment, contends that the provision in the second note authorizing rehypothecation of the collateral was a ratification of the previous repledging; that such ratification was equivalent to a settlement authorized by the Act of March 31, 1860, P. L. 427 §9, as amended by Act of April 11, 1929, P. L. 514 (19 PS 491); and that such settlement was an absolute bar to the prosecution. There are serious flaws in each of these statements. Assuming, as we must for present purposes, that the collateral was repledged without the consent of the prosecutor; that the prosecutor did not know the stock had been rehypothecated when he renewed his note in March, 1932; and that he did not learn of that fact until after the bank had closed, we are unable to conceive of any theory upon which a ratification could be predicated. Ratification, to be effective, must

be with knowledge of the material facts: Aetna L. Ins. Co. v. Nalibotsky, 95 Pa. Superior Ct. 456, 459. In addition, the giving of a later authority to repledge comes far short of the ratification of a previous act.

Section 9 of the Act of 1860 makes it "lawful" for the magistrate, before indictment found, to discharge the prisoner and for the court, after indictment found, "in their discretion" to order a nolle prosequi, where the complaining party appears before the magistrate who has taken recognizance or made the commitment, or before the court in which the indictment shall be found, and acknowledges "to have received satisfaction for such injury and damage." Such settlements to bar a prosecution "must be made in the manner directed by the Act of Assembly": Com. v. Scott, 7 Pa. Superior Ct. 590, 593; Com. v. Carr, 28 Pa. Superior Ct. 122; Com. v. Radzinowicz, 39 Pa. Superior Ct. 173. The prosecutor did not "acknowledge to have received satisfaction for such injury and damage" or make any other settlement, and the magistrate or court did not exercise their discretion to permit the discharge of the defendant or to enter a nolle prosequi.

In a criminal case involving such charges as we have here, the private wrong does not overshadow the offense against the public. The consequences of permitting bank officers to repledge the securities of borrowers without their consent are far reaching and involve the commission of such a crime as is forbidden by public policy, and fraudulent conversion of securities without the consent of the owner is more than malum prohibitum. The business of banking is of such public interest that the people of the state are affected by such practices as are proscribed by these acts of assembly.

It is also urged that the subsequent crediting of the amount realized by the Philadelphia bank from

the sale of securities on the indebtedness of the prosecutor to the Allentown bank furnished a bar to the prosecution. This is a novel proposition, and we do not believe that it requires the citation of authorities to show its fallacy for it is equivalent to saying that reimbursement for a private wrong will stop a criminal prosecution. In fact, the credit which was given was not by virtue of any act of the defendant but by the State which had taken charge of the bank and in the performance of a legal duty. The crime was committed and was complete before there was any authority to repledge and before any reimbursement was made by any one. This motion cannot be sustained.

The first reason assigned in support of the motion for a new trial concerns the testimony of Erdell, a witness for the Commonwealth. He testified that he was a friend of Wolfe, the prosecutor, was familiar with his transaction with the bank, and knew the value of the bonds; that about six weeks before the bank closed and many months after the collateral was repledged, he had a conversation with the defendant in which he asked and was promised by Heckman that he would give Erdell twenty-four hours' notice before he disposed of the Wolfe securities. Here was an apparent concealment of the fact that the stock had been repledged, and it had a very direct bearing upon the controversy between prosecutor and defendant as to whether the prosecutor had any notice of a proposed or actual repledging of the stock.

Complaint is also made of the fact that the defendant was asked upon cross-examination as to his salary. He testified that he had been receiving a salary of $12,000 but during the year 1931 it was reduced to $7,500. As the lower court points out, great latitude is allowed in the cross-examination of a defendant: Com. v. Delfino, 259 Pa. 272, 277, 102 A. 949. This testimony was relevant and had some probative value. It bore directly upon the interest of the defendant.

The next reason suggested for a new trial involves the following part of the record: "Q. You were familiar with the condition of your bank during this time? A. Yes, sir. Q. And when the bank closed you were still a depositor in this bank? A. Yes, sir. Q. And as a matter of fact you and your wife had twenty-one cents in this bank when the bank closed? By Mr. Rupp: That is objected to, and we ask it be stricken out. By the Court: The objection is sustained, that may be stricken out." It is argued that this was extremely prejudicial to the defendant and justifies the granting of a new trial. It will be observed, however, that no application was made for the withdrawal of a juror or the continuance of the case. It must be presumed that the defendant was satisfied to take his chances with the jury, and he cannot now complain. When the complaint is as to an alleged injury done the defendant by a question alone, the defendant, to convict the court of error, should ask for the withdrawal of a juror. He is not allowed to take two chances: Com. v. Diagicobbe, 85 Pa. Superior Ct. 305, 308; Com. v. Cauffiel, 97 Pa. Superior Ct. 202, 214. Even if an application had been made for the withdrawal of a juror, this question would not have warranted the court in exercising its discretion to withdraw a juror.

We have examined all of the remaining assignments of error and find no merit in them.

Judgment is affirmed and the record remitted to the court below, and it is ordered that the defendant appear in the court below at such time as he may be there called and he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.