Commonwealth *v.* Robinson, Appellant.

Argued October 7, 1941.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, RHODES, HIRT and KEN-
WORTHEY, JJ.

*William T. Connor,* with him *John R. K. Scott,* for appellant.

*Carl A. Belin,* District Attorney, for appellee.

OPINION BY RHODES, J., February 28, 1942:

Defendant was convicted as an accessory before and after the fact to burglary. His motion for a new trial having been refused and sentence imposed, this appeal was taken.

The assignments of error are directed to alleged errors in the charge of the court and to the admission of evidence.

The questions raised do not require a detailed review of the voluminous record, as the sufficiency of the evidence to support the conviction is not questioned by appellant. The Commonwealth proved that on March 31, 1941, the building of the Clearfield Taxidermy Company, in Clearfield, Pa., was broken into and entered, and that forty-eight fur coats were stolen from its stockroom. Within a few days thereafter most of these coats were found on the premises occupied by one Edgar Swartz in the vicinity of Altoona, Pa. Thereafter confessions were obtained from Swartz, Harry Walls, and William Kelley, wherein they admitted that they had committed the crime. All of them pleaded guilty, and appeared as witnesses for the Commonwealth in the case at bar. There was ample testimony from which it could be found that appellant had been acquainted with these men, especially Swartz and Walls, for several months prior to the burglary; that appellant had inspected the premises of the Clearfield Taxidermy while on a purported business visit, and later suggested to Swartz the feasibility of stealing fur coats therefrom; that appellant had entered into an agreement with the thieves for a division of the proceeds of the crime; and that subsequent to the theft of the furs appellant had sought to aid them in secreting and disposing of the

stolen goods. Appellant admitted his acquaintance with Swartz, Walls, and Kelley, but denied that his contacts with them had been for the purpose, or as numerous, as shown by the evidence of the Commonwealth. He contended that his meetings with them were few, and limited to legitimate business transactions or attempts on the part of one or more of these men to sell him merchandise, which he refused to buy because he thought the circumstances suspicious under which it was offered. As to his collaboration with them subsequent to the crime, appellant testified that everything he did was induced by fear, and because one of the men threatened him with a gun. It is not surprising that the jury apparently refused to accept appellant's explanation in view of the fact that after his arrest he first gave the police a statement in which he denied that these men had come to him for the purpose of concealing and disposing of the furs immediately following the perpetration of the crime, and later on the same night gave the police another statement in which he admitted that the thieves had sought his assistance, which he had rendered under compulsion and fear. Appellant also admitted at the trial that on the night of the burglary, after the thieves had come to his place of business in Curwensville, they had all driven to the place of one Kranitz, in DuBois, twenty miles away, and that he used his own car and was followed by the thieves in theirs. Appellant admitted that his car could have out-distanced easily the one in which the thieves were riding, which was a much older model and in poorer condition than his. Another factor which undoubtedly reacted unfavorably upon the credibility of appellant's story was his testimony to the effect that several days after the crime he was visited by a man whom he did not know, and that he claimed to have been sent to him by Walls and stated that he had been in jail with the latter. Appellant testified further that this man demanded $500 in cash, that he produced a message from

Walls, which he said was smuggled out of the jail in his shoe, wherein Walls requested appellant to provide bail for the three thieves; that he ordered this man out of his store, whereupon the visitor threatened appellant with a revolver. In rebuttal the Commonwealth produced George E. Funk, a member of the state police force for more than twelve years. He had been identified by appellant as the unknown emissary about whom he had testified. Funk testified that he had been placed in prison with Walls by prearrangement with the police, and that after conversing with Walls he had received from him the message to take to appellant at Curwensville. The note was produced and admitted in evidence. Funk stated that he went to Curwensville and delivered the message; that he had no gun with him, as it had been removed previously by a fellow officer; that in his conversation with appellant the latter had told him that the boys had stolen too many furs, that they were hard to dispose of at that time of year, that he would not go their bail, that he should tell them not to write or call, as it would invite detection, and that he would like to help them but his property was not held in his own name, and consequently he was unable to give bail.

Appellant complains in the first assignment of error that the charge was insufficient as it related to the burden of proof. The jury was told: "In this, as in all criminal cases, a person charged with a crime comes into court with the presumption of innocence. In other words, the law presumes a man to be innocent until he is proved to be guilty beyond a reasonable doubt." The trial judge instructed the jury on the doctrine of reasonable doubt, and he also described in detail what constitutes one an accessory before the fact and an accessory after the fact, and pointed out the essential facts which it was necessary for the Commonwealth to prove beyond a reasonable doubt in order for the jury to be justified in finding appellant guilty on either count

in the indictment. It is not ground for reversal that the trial judge did not say in express words that the burden of proof never shifted from the Commonwealth (*Com. v. Arcurio,* 92 Pa. Superior Ct. 404, 408), and he was not required to explain the meaning of the term in the absence of a request so to do (*Com. v. Conroy and Kline,* 109 Pa. Superior Ct. 274, 282, 167 A. 407). From an examination of the charge of the court in its entirety, we are convinced that the issues were clearly presented to the jury, that there could be no misconception as to the burden of proof being on the Commonwealth to establish the charges in the indictment beyond a reasonable doubt, and that the jury could not have had any difficulty in comprehending the questions they were to decide or the rules of law to be applied in doing so. See *Nathan v. McGinley,* 342 Pa. 12, 19 A. 2d 917.

Appellant contends (fourth assignment of error) that the trial judge erred in his instructions concerning the consideration to be given the testimony of accomplices. In substance, the jury was charged that this presented a special question of credibility; that the testimony of accomplices must be scrutinized with particular care, but if, after so considering it, the jury found it to be true, such testimony would support a conviction. The trial judge indicated that there was other evidence which corroborated the testimony of the accomplices in some respects. His exhaustive review of the evidence, concerning which no complaint is made, could not have failed to aid the jury in distinguishing the points of corroboration and contradiction. The instructions were sufficient, especially in the absence of a request to amplify them. The extent to which the jury is to be admonished concerning the testimony of accomplices is a matter within the discretion of the trial judge (*Com. v. Elliott,* 292 Pa. 16, 23, 140 A. 537), and our Supreme Court has said that: "Although it is a common and wholesome practice for trial judges to

warn the jury as to the care they should take in weighing the testimony of alleged accomplices and the importance of corroboration of such testimony, a failure so to instruct is not reversible error unless a clear abuse of judicial discretion is shown": *Com. v. Bruno,* 316 Pa. 394, at pages 402, 403, 175 A. 518, at page 521. It is also clear that when the trial judge instructed the jury that "in this case, of course, that rule would not have a strict application, or at least it may not have, that being for you," he was obviously referring to his statement immediately previous thereto that "it is a matter of law that even when a case depends entirely upon the uncorroborated testimony of an accomplice to a crime, there may be a conviction upon such testimony." See *Buntz v. General American Life Ins. Co.,* 136 Pa. Superior Ct. 284, 289, 7 A. 2d 93. He then explained his remark by stating that there were other facts and circumstances in the case which corroborated the testimony of the accomplices. Appellant's contention that the instruction complained of referred to the rule concerning the consideration to be given the testimony of an accomplice is without merit.

The second and third assignments of error relate to the admission in evidence of two written statements given under oath by Jacob Kranitz to the district attorney. This question was not argued before the court below on the motion for new trial, and consequently was not considered in its opinion. It appears that Kranitz testified as a witness for the Commonwealth, and on cross-examination counsel for appellant sought to impair his credibility in every possible way. In fact, the cross-examination consisted principally of a multitude of questions directed to that objective. Among other things, he was asked whether he had been drinking the night appellant came to his store with Swartz, Walls, and Kelley; whether he was taken to a camp in the mountains and treated to a dinner by the county detective; whether he had been "interviewed quite fre-

quently by the district attorney and various members of the state police, the county detective, time after time"; whether he had not called at the office of Mr. Chase, one of appellant's counsel at the trial, and stated that "if [Chase] would tell [him] what to say in the court room, [he] would perjure [himself] and go through hell for Rube Robinson." During this cross-examination the district attorney warned counsel for appellant that these statements of Kranitz would be offered in evidence if the line of interrogation was pursued. This warning was ignored, and the statements were offered and admitted for the purpose of showing that the testimony of the witness was not a recent fabrication, the statements being consonant with his testimony at the trial and having been made on the night of appellant's arrest and the following day, before any of the events referred to in the cross-examination had occurred. The jury was instructed explicitly that these statements had been admitted in evidence only for the purpose of rebutting the inference that the testimony of Kranitz was a recent fabrication, and that they were to be considered solely in that connection. We find no error in this. In *Com. v. White,* 340 Pa. 139, at page 143, 16 A. 2d 407, at page 409, our Supreme Court said: "As this court pointed out in *Lyke v. Lehigh Val. R. R. Co.,* 236 Pa. 38, 48-50 [84 A. 595], the admission of evidence of a consonant statement, there defined as 'a prior declaration of a witness whose testimony has been attacked and whose credibility stands impeached, which, considering the impeachment, the court will allow to be proved by the person to whom the declaration was made, in order to support the credibility of the witness, and which, but for the existence of such impeachment, would ordinarily be excluded as hearsay,' is a matter to be decided in each case by the trial judge in the exercise of a wise discretion and depends largely upon the character and degree of impeachment indulged in by the other side." In the

present case there was more involved than a mere conflict of testimony, and the statements were not admitted for such a reason. Cf. *Com. v. Kay*, 14 Pa. Superior Ct. 376. Where a witness "is charged directly or inferentially, with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made a similar statement when the imputed motive did not exist ......": *Com. v. Brown*, 23 Pa. Superior Ct. 470, at page 507. Following the lengthy examination of Kranitz for the purpose of impeaching or discrediting his testimony the statements made by him prior to the events to which the cross-examination referred were admissible to show that his testimony at the trial was not a fabrication of recent date. *Com. v. Goetz*, 129 Pa. Superior Ct. 22, 29, 195 A. 144.

Appellant also argues in this court (fifth assignment of error) that the court below erred in charging the jury on the question of the guilt of appellant if he acted under compulsion or duress. At the trial there was no exception to the portion of the charge of which complaint is now made, nor was there a request to amplify the instructions that had been given. The jury was told, in effect, that if the acts of appellant were not voluntary, but were performed as a result of fear while under compulsion or duress, no guilty intention could be found therefrom. The omission to say that appellant should be found not guilty if he acted under compulsion or duress does not constitute reversible error. The refusal of appellant's points for charge in relation to this aspect of the case was proper in view of the fact that they had been substantially covered in the charge. Moreover, both the points and the charge might be said to have presented this defense to the jury in a form broader than that to which appellant was entitled. See 1 Wharton's Criminal Law, 12th Ed., § 384, p. 514.

The sixth and eighth assignments of error were not argued in this court, and apparently have been abandoned. The seventh and ninth assignments as well as the eighth do not seem to have been raised or argued in the court below, and that court cannot be charged properly with error in refusing to grant a new trial for a reason not presented to it. *Com. v. De Felippis,* 245 Pa. 612, 616, 91 A. 1059. Furthermore, an examination of these assignments reveals no merit in any of them.

A careful scrutiny of the record discloses that appellant received a fair and impartial trial during which he was represented by able and experienced counsel who were permitted considerable latitude by the trial judge in the examination and cross-examination of witnesses. Only a general exception was taken to the charge at the conclusion of which his chief counsel, an experienced and able trial lawyer, stated: "Personally, I have no request for anything further. I have listened to the charge of the court and am satisfied." Perhaps it is significant that appellant's motion for a new trial was argued by counsel other than those who represented him at the trial, and still other counsel represent him on this appeal. The conviction was warranted by the evidence, and the best efforts of all appellant's attorneys have been unable to convince either the court below or this court that error exists which would justify a reversal.

The assignments of error are all overruled, and the judgment and sentence of the court below are affirmed.