Commonwealth *v.* Syren et al., Appellants.

Argued April 13, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, HIRT and KENWORTHEY, JJ.

*Thomas D. McBride,* for appellants.

*Franklin E. Barr,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., July 23, 1942:

The appellants formerly were engaged in the stock brokerage business in Philadelphia under the name of Syren, Bressler and Company. They were convicted of fraudulent conversion of certain securities belonging to Henrietta C. Moody of Brooklyn, New York. These two appeals seeking a new trial followed sentences imposed.

To understand the issues before us it will be necessary to refer in some detail to the evidence produced at the long trial. John Moody, the husband of Henrietta C. Moody, began purchasing securities through Wall, Syren and Bressler, predecessor of Syren, Bressler and Company, in 1927. Moody in 1933 transferred his margin account with the defendants into his wife's name. Thereafter the defendants bought and sold securities at her instance and carried for her four different margin accounts. Later they were consolidated into one account in the name of Mrs. Henrietta C. Moody. On October 18, 1938, against the securities in her account there was a debit balance in favor of the defendants. On that date Mrs. Moody, who was ill, desired to transfer her account to another brokerage firm. She sent her son, Alfred G. S. Moody, to Philadelphia with a letter addressed to the defendants stating that she had transferred her entire account to her son Alfred G. S. Moody.

The son delivered the letter and requested defendants to give the securities in her account to F. P. Ristine and

Company upon their payment of the balance due. Bressler thereupon directed John H. Olmes, their bookkeeper, to prepare a statement of Mrs. Moody's account. It showed a credit of the following securities: Lehigh Valley Transit Company 5% Bonds of a face value of $40,000; 11,900 shares of Remington Arms Company common stock; 7,800 shares of Continental Baking Company class "B" common stock; 200 shares of Curtiss-Wright common stock; 200 shares of Simmons Company common stock; 20 shares Eastern Malleable Iron Company common stock; and an indebtedness of $46,701.38.

Ristine and Company the next morning, through their cashier, presented a treasurer's check of the Fidelity-Philadelphia Trust Company to the defendants' order for the amount of Mrs. Moody's indebtedness and a request was made for delivery of the securities in her account. Bressler later informed Charles E. Land of Ristine and Company that his firm could not deliver the Moody securities as they did not have them. That evening the defendant Syren and Harold A. Brunswick, a salesman of the defendants and an old friend of the Moodys, conferred in Brooklyn with Mrs. Moody, her son Alfred G. S. Moody, and her brother-in-law William P. Hamilton, Jr., Esq., a member of the New York bar. Syren then admitted that Mrs. Moody's securities had been sold and when charged by Alfred Moody with having wrongfully taken them he made no denial or explanation. Instead he offered to make a partial restitution with certain stock belonging to him or defendants' firm and to transfer to her his equitable interest in his home in Bywood, Pennsylvania.

The following morning, October 20, 1938, a meeting was held in Philadelphia at the office of Alfred G. S. Moody's counsel, Edward P. Smith, Esq., at which defendants and their then attorney, Meyer Casman, Esq., were present. Defendants then admitted that they could not make delivery of Mrs. Moody's securities as

they had been sold under her direction given in writing November 29, 1937. This alleged authority, exhibit No. 7, was a note written in the handwriting of defendants' salesman, Brunswick, addressed to the defendant firm Syren, Bressler and Company, and read as follows:

"Gentlemen:

Please transfer my account to your private ledger.

Yours very Respectfully,

Henrietta C. Moody"

Mrs. Moody testified that she could not read the note as she was recovering from an eye operation and that she signed her name at the request of either Brunswick or Syren. Syren took the position at the meeting that this writing made Mrs. Moody a partner in the firm. Later, at the trial both Syren and Bressler testified that this letter made her a creditor. Smith disagreed with Syren's interpretation and demanded the production of the securities immediately. Syren then in the presence of Bressler offered again to transfer to Mrs. Moody his residence and certain securities by way of a restitution. This offer was refused.

Olmes, defendants' bookkeeper, testified that the defendants' books showed that they sold for Mrs. Moody's account on Nov. 28, 1936 Lehigh Valley Transit bonds of a face value of $35,000 for $21,000, but that the bonds continued to be carried in her account. Moreover, they credited her account with interest received on these bonds long after they had been sold. On the 11,900 shares of Remington Arms Company stock carried on October 18, 1938, to the credit of Mrs. Moody's account, all but 50 had in fact been sold by defendants and transferred out of her name prior to November 29, 1937. Notwithstanding the previous sale of all this stock except 50 shares, her account in December 1937 was credited with $2,142 in dividends received for the full 11,900 shares. Out of the 7800 shares of Continental Baking Company class "B" stock, delivered to defendants by Mrs. Moody as collateral security for

a loan made to her of $4,000 on October 20, 1937, they sold 4800 shares of that stock six days later and no credit was given or other entry thereof was made in Mrs. Moody's account. The 200 shares of Curtiss-Wright stock were sold by the defendants on October 25, 1937, and that was not reflected in her account.

It will be observed that all of the sales were prior to Mrs. Moody's alleged letter of authorization of November 29, 1937. The defendants never delivered to Mrs. Moody or her son the stocks credited to the Moody account, or the equivalent value thereof.

The defense was that the securities in the account belonged to Mr. Moody the husband and not to Mrs. Moody; that he directed the defendants to transfer his account and the securities therein to his wife because he was having trouble with the Internal Revenue Department respecting his income tax returns; and notwithstanding this attempted concealment he remained the owner of the securities and continued to control the account until his death in May 1938.

Syren stated that Mr. Moody in 1936 authorized his firm to sell any or all his securities to finance the Volco Cement Corporation, which the defendants were then promoting and in which Mr. Moody was interested as he had hoped to have his son employed by that company; that Moody had agreed also that the defendants could transfer his account to their private ledger so that there could be no purchase of stock, and no demands for money, margins, or return of the securities, but the defendants should nevertheless continue to credit his account with all dividends and interest on bonds then belonging to him, and continue to charge against the account interest on his indebtedness just as if there had been no transfer. The defendants failed to show that the proceeds from the sale of the securities alleged to have been disposed of for the benefit of the Volco Cement Corporation, were applied to the credit of that company.

The defense relied upon at the trial was not asserted

at the time Ristine and Company in October 1938 made a demand for the securities, or when Syren conferred with Mrs. Moody, her son, and brother-in-law in New York, or when a statement was given of their assets and liabilities to their creditors in October 1938. The alleged authorizations, none of which were in writing, to transfer her account, to sell stocks and bonds representing large sums of money to help finance a company in which Moody was not even an officer, and the explanations of the other transactions were so highly improbable that it is no wonder the jury rejected the testimony of the defendants.

After the Commonwealth offered its evidence and rested, the defense counsel demurred to the evidence as the Commonwealth's proof showed that when the demand was made by Ristine and Company on October 18, 1938, the securities belonged to Alfred G. S. Moody and in the indictment the property alleged to have been sold was that of Henrietta C. Moody, which was not in compliance with the Act of 1917, May 18, P. L. 241, 18 PS §2486. The Commonwealth then, by leave of the court, recalled Mrs. Moody and her son. She testified that she remained at all times the owner of the securities in the Moody account and that her son acted as agent for her and made the demand as she was too ill to go to Philadelphia. The son corroborated the mother's testimony.

Allowing the Commonwealth to open the case and produce evidence to meet the objection to the variance between the indictment and evidence offered was within the discretion of the court. The real test to apply in admitting evidence is that of competency not the time or the order of its receipt. *Commonwealth v. Gormley,* 78 Pa. Superior Ct. 294, 297, 298; *Commonwealth v. Zang,* 142 Pa. Superior Ct. 573, 576, 16 A. 2d 745. The court very properly dismissed the demurrer.

The appellants' second assignment of error relates to the failure of the Commonwealth to elect one trans-

action upon which it relied for a conviction. The Commonwealth's evidence showed the Moody securities were acquired and sold at different dates under varying circumstances. The appellants argue that it was important for them to know at the trial, and imperative for the Commonwealth to state, upon which transaction it sought to base a conviction, as otherwise the jurors might be convinced as to one transaction and not as to another, thereby preventing a unanimous verdict as to the conversion of any particular security.

The Commonwealth's testimony warranted a conclusion evidently reached by the jury that sales of the securities from time to time were made pursuant to a plan of defendants to convert fraudulently all or any part of Mrs. Moody's securities in their hands. It was not necessary for the Commonwealth to choose one of these related fraudulent transactions and confine its proof to it. It is well to remember that the appellants were not convicted of a series of offenses but of one crime, viz., fraudulent conversion. The Commonwealth's proof showed that the crime was committed and consummated on the date of the demand and refusal to deliver the securities: *Com. of Pa. v. Heckman*, 113 Pa. Superior Ct. 70, 75, 172 A. 28.

The appellants in their brief frankly admit that it was not necessary for the Commonwealth to prove a fraudulent conversion of all the securities; some of them was sufficient. The court in its charge made it very clear that a unanimous verdict was necessary, at least as to one transaction, in the following language: "It would not be sufficient if some of you agreed that one security had been converted, and others agreed that another had been converted, but you could not agree as to any one. You must all unanimously agree upon such conversion respecting at least one or more of the securities." [The demurrer was properly overruled.]

The next complaint of the appellants is that there was a variance at the trial between the date alleged in

the indictment and that proved, and that such variance was a fatal error. The indictment alleged the fraudulent conversion of Mrs. Moody's securities on October 19, 1939, while the Commonwealth's proof showed a conversion on October 18, 1938. The defendants' counsel in his argument to the jury attempted to point out this variance but was interrupted by the district attorney, who contended that the variance was immaterial and it was improper matter to argue before the jury. Thereupon the defendants' counsel asked the Commonwealth to either amend the date of the conversion named in the indictment to conform with the proof or to stand upon the variance as immaterial. The district attorney refused to amend and the court ruled that no amendment was necessary for the reason that time was not an important factor in that the exact date was not the essence of the offense charged. There was no denial that the date of the demand and refusal proved was correct. The defendants' own written records show that fact so that they were not prejudiced by ignorance. Of course it was essential for the Commonwealth to prove, as it did, that the time the offense was committed was prior to the finding of the indictment and within the period prescribed by the statute of limitations. *Commonwealth v. Polin,* 140 Pa. Superior Ct. 18, 24, 25, 12 A. 2d 798; *Commonwealth v. Levy,* 146 Pa. Superior Ct. 564, 23 A. 2d 97. We conclude, therefore, that the variance was not material and the court's ruling in reliance upon the general principles stated above was proper.

The court did permit the Commonwealth to amend the indictment as to the time the alleged offense was committed after a verdict had been returned. This is the subject of the next complaint. The record discloses that the defendants were found guilty on May 14, 1941. Their counsel on July 9, 1941, by leave of court, filed a motion in arrest of judgment asserting that the criminal code of 1939, June 24, P. L. 872, §834,

18 PS §4834, made fraudulent conversion a felony, whereas the indictment in the present case, though charging an offense committed October 19, 1939, failed to allege the acts were done feloniously, but see *Commonwealth v. Kinner*, 137 Pa. Superior Ct. 256, 258, 259 9A. 2d 177.

On November 24, 1941, immediately before sentence was imposed the district attorney, at the suggestion of the court, moved to amend the indictment so as to charge an offense prior to September 1, 1939, the effective date of the 1939 code, supra, as the proof showed the conversion to have taken place on October 18, 1938. The court allowed this amendment over the objection of defendants' counsel. It is now asserted that the amendment was one of substance and improperly allowed after the verdict. The correctness of the lower court's action depends upon whether the exact time that the alleged offense was committed was an important factor. We think it was not. Sections 11, 12, and 13 of the Criminal Procedure Act of March 31, 1860, P. L. 427, 19 PS §§431-435, permit amendments to indictments and give the court broad powers in this respect: *Com. of Pa. v. Streets*, 113 Pa. Superior Ct. 65, 67, 172 A. 31; *Commonwealth v. Liebowitz*, 143 Pa. Superior Ct. 75, 17 A. 2d 719.

It was held in *Commonwealth v. Tassone*, 246 Pa. 543, 546, 92 A. 713, that a variance between the indictment and the proof adduced at the trial may be amended even after a verdict if the variance or amendment is not material or substantive and the defendant is not prejudiced thereby. Time becomes an important factor only when it enters into the nature of the offense, otherwise any time may be shown on the trial if it is prior to the finding of the indictment and within the period prescribed by the statute of limitations: *Commonwealth v. Major*, 198 Pa. 290, 300, 47 A. 741; *Commonwealth v. Wiswesser*, 124 Pa. Superior Ct. 251, 188 A. 604; *Commonwealth v. Jordan*, 136 Pa. Superior Ct. 242,

250, 7 A. 2d 523; *Commonwealth v. Polin,* supra. The amendment to the indictment charged an offense committed prior to the effective date of the criminal code of 1939, thereby conforming with the proof. The appellants for the reasons heretofore stated could not have been misled to any extent by the amendment, or prevented from presenting any defense they had. The substance of the offense of fraudulent conversion is identical under both acts.

The appellants' seventh assignment of error is based upon the alleged failure of the court to charge sufficiently on the important issue relating to the ownership of the securities. Their counsel argues that from the testimony the jury might have concluded that the securities never were the property of Mrs. Moody but were her husband's and that there were other possibilities of ownership that should have been outlined to the jury; that the court failed to define specifically and explain the nature of the crime of fraudulent conversion.

The Commonwealth contended that Mrs. Moody was the owner of the securities and proved that all the certificates of stock, before and after demand was made for the return thereof, were in her name. The defense was that Mr. Moody was the actual owner of the securities alleged to have been fraudulently converted. The issue of ownership was adequately presented to the jury for their determination.

At the very beginning of the charge the trial judge defined fraudulent conversion substantially in the language of the Act of 1917, supra, which is so plain that one could hardly fail to understand the nature of the offense. The jury was expressly told that the conversion must be fraudulent to bring it within the statute, and again at the end of the charge that it was to determine whether the securities or any of them were fraudulently converted by the defendants. There can be no doubt that the jury thoroughly understood the elements that constituted the crime and the issues of fact involved. The

jury could not have received the impression that the mere withholding of property if not fraudulent, would have justified finding the appellants guilty as in *Commonwealth v. Wiener*, 340 Pa. 369, 375, 17 A. 2d 357, relied upon by the appellants.

It is suggested in appellants' brief that it was a civil, rather than a criminal, liability if any existed. There was no denial of the failure to produce or account for the securities which concededly had been pledged and were in their possession, and under the evidence of the Commonwealth were converted fraudulently. All the elements of the crime charged were present. The several defenses advanced were weak and inconsistent.

The eighth assignment of error is directed to the court's instruction to the jury relative to the defendants' right to hypothecate the securities. It is argued that the jury was told erroneously that no such right existed unless an *express* agreement was shown, whereas *consent* alone is sufficient under the Act of 1878, May 25, P. L. 155, §1, as amended, 18 PS §2881, and that standard set up placed a greater burden upon the defendants than the law required.

A reading of that portion of the charge dealing with defendants' right to hypothecate discloses that the trial judge adopted the language of the statute itself and clearly and correctly stated the law in point. The defendants did not rely upon any claim of consent by Mrs. Moody, but upon the so-called letter of authorization, which it was contended created a debtor-creditor relationship. There was no evidence whatever of the consent of Mrs. Moody to rehypothecate for sales occurring before the execution of that letter and nowhere thereafter, other than the letter. The court covered all the matters relied upon by the defendants as showing their rights to rehypothecate. Assuming, but not conceding, that the defendants had the authority to rehypothecate, they were required even in that event

to be ready and able at all times to return the securities upon tender, which was made, of the amount due them.

That brings us to the last assignment of error which is directed to an alleged inadequacy and a misleading tendency of the charge. The trial judge's instructions gave a careful review of the evidence, an adequate reference to the contentions of both the Commonwealth and the defendants, and an accurate statement of the law applicable to the facts that was free of any reversible error. It is true the court pointed out inconsistencies in defendants' evidence, but we are not convinced that the remarks he made exceeded reasonable comment. It has always been recognized that the trial judge in a criminal case has the right to express his opinion as to the credibility of the witnesses and pose questions as to the plausibility of the defense offered, provided he does not deprive the jury of its right to determine ultimately the facts: *Com. of Pa. v. Fahey,* 113 Pa. Superior Ct. 598, 608, 173 A. 854; *Commonwealth v. Watson,* 117 Pa. Superior Ct. 594, 178 A. 408.

A careful consideration of all the questions advanced by the appellants has not persuaded us that any reversible legal error was committed or. that an injustice was done to the appellants in not having a fair trial. The Commonwealth's evidence clearly justified their conviction.

Judgment in each appeal is affirmed. It is ordered that each of the defendants appear in the court below at such time as he may be there called and that he be committed by that court until he has complied with the sentence, or any part of it, as had not been performed at the time his appeal was made a supersedeas.