Commonwealth *v.* Glickstein et al., Appellants.

Argued October 8, 1942.

Before Keller, P. J., Cunningham, Baldrige, Rhodes, Hirt and Kenworthey, JJ.

*Harry R. Back,* with him *John Patrick Walsh,* for appellants.

*Franklin E. Barr,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

Opinion by Hirt, J., January 28, 1943:

Appellants and Lena Berman were tried together and were convicted of perjury, on separate indictments. Lena Berman had made information against one Nate Stupp, charging him with having assaulted her. The perjury indictments accused each of the defendants of giving false testimony under oath at the preliminary hearing before a magistrate on the assault and battery charge. In this appeal, appellants contend that they were unduly restricted, to their prejudice, in the cross-examination of Commonwealth witnesses; they also assign as error excerpts from the charge of the court.

The following circumstances led up to the alleged

assault: Nate Stupp, a committeeman of an unnamed political party, with others, had petitioned the Registration Commission to strike the names of a number of registered voters from the registry list; among them, one Mathew Glickstein, on the ground that he was an unnaturalized alien. (Mathew is a son of David Glickstein, a brother of Benjamin and a nephew of Lena Berman.) Hearings on the petitions were held before the Commission on the 14th floor of the City Hall Annex in Philadelphia, during the evening of October 27, 1939. The Commission adjourned at 10:30 and, without disposing of the complaint as to Mathew Glickstein, continued his hearing to a later date. Appellants and Lena Berman then left the hearing room together, followed by Nate Stupp and others. In the hallway between the elevator shaft and the stairway Mrs. Berman was heard to scream; she collapsed to the floor and later swore to an information that Stupp had assaulted her. He was bound over to court on that charge but never came to trial. The prosecution was dropped at the suggestion of Lena Berman when it came before the grand jury.

There is no testimony that Stupp assaulted Mrs. Berman; on the contrary the evidence is that he did not. Each of the defendants on the trial of this case, testified that Mrs. Berman was struck by some unknown person; none of them identified Stupp as the actor and no other witness either for the Commonwealth or the defendants testified that Stupp committed the alleged assault. From the testimony it appears that Mrs. Berman walked down the hall followed by a group of five men but that Stupp was not one of them. A number of Commonwealth witnesses testified that Stupp left the hearing room with another group and he was at least 25 feet from Mrs. Berman when she cried out and fell to the floor. No witness, other than Mrs. Berman and the appellants testified

to any assault. It is possible that Mrs. Berman was not assaulted by anyone but that her conduct was staged in an attempt to harass Stupp. There is testimony that just before the incident, Benjamin was heard talking to her in Yiddish. What was said is unknown but Benjamin placed his hands on his stomach and stooped over as though suggesting how she should act; she appeared to disagree and started to walk away and he pulled her back. But as they walked down the hall Benjamin shouted "here he comes" and Mrs. Berman cried out and went down on her knees.

The indictments charged each of the appellants with having testified falsely under oath at the preliminary hearing that "he ...... *had seen* the said Nate Stupp commit an assault ...... and *had seen* the said Nate Stupp beat, wound and strike the said Lena Berman with a weapon commonly known as ...... a black jack." (Italics added.) Three witnesses who were present at the preliminary hearing stated positively that appellants, in substance, so testified and there is the circumstance that the magistrate bound Stupp over on their testimony. This proof coupled with appellants' admission on the trial of this case that they do not know who assaulted Lena Berman is sufficient to support their conviction (*Com. v. Sumrak*, 148 Pa. Superior Ct. 412, 25 A. 2d 605) unless the record discloses reversible error in the charge or rulings of the trial judge.

A number of assignments of error call for little discussion. Appellants complain that they were restricted in their cross-examination of Commonwealth's witness Hargadon as to a statement made to him by one Harry O'Donnell, after the alleged assault, to the effect that he had heard that Stupp had committed it. The subject of the proposed cross-examination was hearsay evidence and was properly excluded. So also, the exclusion of testimony as to the physical condition of Lena Berman after the alleged assault, was proper

in the absence of testimony connecting Stupp with it. Appellants complain that the court sustained an objection to the question on cross-examination of the witness Cohen: "You are a political ally of Mr. Stupp; is that correct?" The answer, properly, might have been allowed but the error is not serious. It appeared elsewhere that Stupp and Cohen were members of the same political party and that appellants were members of another. The testimony may support the inference of political rivalry but there is no proof of animosity on the part of Stupp and Cohen toward the defendants. The statement of the trial judge, referring in the charge to the Commonwealth's case, that "as far as we know, the witnesses have no interest in this proceeding at all" is not at variance with the record. It did not stamp them as credible or disinterested especially when considered with the following from the charge: "As I have explained to you, I think, before, you are the sole judges too as to whether or not the testimony of these witnesses can be believed, or whether you believe it. You are the sole judges as to the credibility of the witnesses. You have had a chance to look them over. You have had a chance to hear them. You have a chance now to go over their testimony and compare it in determining in your minds whether or not they are telling the truth."

Appellants also assign as error this excerpt from the charge: "Did these three defendants, or any one of them wilfully and deliberately make a false affidavit for the purpose of having Mr. Stupp arrested? If they did that, then they are guilty of this crime of perjury. If they did not do that, if they were just mistaken and made general statements and did not wilfully and deliberately swear to an untruth, then they would not be guilty of perjury, and your verdict would have to be for the defendants. It is purely a question of fact for you from all of the evidence in the case." Appel-

lants contend that this is equivalent of saying that if any one of the defendants committed perjury, all three are guilty. In the context of the charge as a whole the above language does not convey that meaning. In the sentence: "If *they* did that, then *they* are guilty of this crime of perjury," "they" refers back to "these three defendants." This is the equivalent of saying: "If *every* one of them committed perjury *all* are guilty." True, the jury might have been told specifically that a conviction of all did not follow from a finding of the guilt of only one or two of the defendants; but that is implied in the charge and defendant did not ask for additional instructions. Only a general exception was taken to the charge.

On reasonable doubt (assigned as error) the court charged: "I think I ought to say to you in this case, because it is of sufficient importance for me to again repeat, that every defendant comes here before us presumed to be innocent, and that presumption of innocence follows him all the way down to the end of the trial. I have explained that to you on several occasions before. [This statement clearly indicates that the former explanations related to the presumption of innocence and not to reasonable doubt.] You must be satisfied beyond any reasonable doubt that that presumption of innocence has been rebutted and that the defendants are guilty of the crime charged. If you have any fair, honest, reasonable doubt arising from the evidence itself, it is your duty to give the benefit of that doubt to the defendants and find them not guilty." This is not the language of *Com. v. Kluska,* 333 Pa. 65, 3 A. 2d 398, but it is adequate *(Com. v. Berney,* 262 Pa. 176, 105 A. 54; *Com. v. Corrie,* 302 Pa. 431, 153 A. 743) especially in the absence of a request for an amplification of the definition. *Com. v. Conroy and Kline,* 109 Pa. Superior Ct. 274, 167 A. 407.

The charge in this case considered as a whole con-

tains a correct statement of the law, and, on the whole, an adequate and impartial presentation of the case to the jury. Cf. *Com. v. Johnson,* 133 Pa. 293, 19 A. 402. Some of the rulings of the trial judge on admissibility of evidence suggest error but the defendants were not prejudiced. We do not find merit in any of the assignments.

The judgments of sentence are affirmed and it is ordered that each defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it, which has not been performed at the time the appeal was made a supersedeas.

DISSENTING OPINION BY RHODES, J.:

I dissent. I would grant appellants a new trial. If there were nothing more in the case, the charge of the court requires a reversal of the judgments and a new trial. As a whole, the charge is inadequate and insufficient, and in parts there is fundamental error. Appellants were indicted and tried for a felony, and the charge should be commensurate with the seriousness of the crime. In the first place, in the majority opinion, the construction given to the charge of the court is an untenable interpretation of a basic error, and the plain and common meaning conveyed by the charge is ignored. A jury cannot be expected to make any such grammatical analysis of a charge as that contained in the majority opinion. In charging the jury the trial judge said: "...... Mrs. Berman, took an affidavit before Magistrate O'Hara that Mr. Stupp had assaulted her, had struck her and committed assault and battery upon her. The affidavit is not here. We do not know exactly the wording of that affidavit, but we can easily imagine it from the testimony that has been given. At any rate, there was an affidavit taken that Mr. Stupp had committed assault and battery upon her on that

night, October 27, 1939. That affidavit was taken the next day and a hearing was had before the magistrate on November 3. ...... Did these three defendants, or any one of them, wilfully and deliberately make a false affidavit for the purpose of having Mr. Stupp arrested? If they did that, then they are guilty of this crime of perjury." I think the jurors, or any other reasonable person, would understand by that statement that if any one of the defendants made a false affidavit all were guilty of the crime of perjury. But the appellants made no such affidavit. The affidavit for warrant was made by Lena Berman. Appellants were separately indicted for appearing as witnesses and testifying falsely before the magistrate at the preliminary hearing. Their pleas put in issue the facts averred in the indictments. The charge was not responsive to the indictments and misstated the issues.

It cannot be said that such error in the charge was harmless when, if the jury accepted what the court clearly said, the verdicts were improper. It is not our function to rewrite an erroneous and prejudicial charge in a criminal case.

The charge is also insufficient as it relates to the burden of proof. This alone would probably not be ground for reversal in the absence of a request for further explanation. See *Com. v. Robinson,* 148 Pa. Superior Ct. 61, 65, 66, 24 A. 2d 694. However, it is an element which discloses the insufficiency of the charge in its entirety.

The trial judge should also have adequately defined perjury (section 322 of the Penal Code of 1939, P. L. 872, 18 PS §4322), explained the elements which constitute that crime, and described the proof required to sustain it. Certainly, the charge of the court as to the making of false affidavits for the purpose of having Mr. Stupp arrested has nothing to do with the fact alleged as falsely sworn by appellants as witnesses be-

fore the magistrate, and consequently it failed to clarify the issues so that the jury could comprehend the questions they were to decide. In *Sears v. Birbeck,* 321 Pa. 375, 383, 184 A. 6, in an opinion by Mr. Justice (now Chief Justice) MAXEY, the Supreme Court said that this is a primary duty of a trial judge, a duty that must never be ignored.

There was no record of the testimony before the magistrate. It is significant that at appellants' trial the magistrate was called by the Commonwealth, and testified: "Q. Do you recall what testimony was given to you by the defendants, David Glickstein, Benjamin Glickstein, and Lena Berman? A. I do not. Q. You have no recollection of that now? A. No recollection. Q. Were there any notes of testimony taken at that time, sir? A. Not to my knowledge." In this case careful scrutiny should have been given to the oral testimony upon which the convictions for having testified falsely under oath in a judicial proceeding are based, there being an absence of authoritative or record proof of the averment in the indictments as to what constituted such alleged false testimony.

The inadequacy and the insufficiency of the charge are so obvious that further discussion of the case is probably not required. But there is another aspect of this case which I feel cannot be ignored. At least, it is contrary to my conception of what is essential to the impartial administration of justice. The prosecutor was a detective in the office of the district attorney (it was so stated at the oral argument and in appellants' brief) and a committeeman for a political party. The district attorney's office is in the unenviable position of having prosecuted these appellants on behalf of an attache of its own office who was interested in a matter in which he was involved as a result of his political activities. It is only necessary to refer to the fact that a district attorney is a quasi judicial officer.

"He represents the commonwealth, and the commonwealth demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers; as it is to see that no guilty man escapes. Hence, he should act impartially": *Com. v. Nicely,* 130 Pa. 261, at page 270, 18 A. 737, at page 738. Cf. *Com. ex rel. Minerd et al. v. Margiotti,* 325 Pa. 17, 188 A. 524. No public prosecutor such as a district attorney should be involved in a case in which he may have a direct or indirect interest. In such event a special prosecutor should be appointed; this has frequently been done. Although here he may not be a heated partisan he certainly could not act impartially.

I do not agree with the majority opinion where it holds that the rulings of the trial judge on admissibility of evidence were only harmless error. Appellants were precluded by the rulings of the trial judge from showing the interest and bias of the witnesses. In this case I think that is substantial error. The majority opinion is inconsistent when it states "The statement of the trial judge, referring in the charge to the commonwealth's case, that 'as far as we know, the witnesses have no interest in this proceeding at all' is not at variance with the record" while conceding that the trial judge erred in sustaining the objections to the cross-examination of the witnesses as to their political affiliations with the prosecutor. Certainly, there could be no evidence of interest when examination for the purpose of eliciting that fact had been denied.

It may not be amiss to refer to the circumstances surrounding the failure of Mrs. Berman to press her charge against Stupp before the grand jury. In his charge the trial judge said: "Then afterwards, for some reason or other, they did not prosecute the matter before the grand jury and the matter was dropped there." In the majority opinion it is said: "The prosecution

was dropped at the suggestion of Lena Berman when it came before the grand jury." Neither of these statements is entirely accurate. Both Mrs. Berman and Samuel Glickstein testified that she had agreed to withdraw her prosecution of Stupp if Stupp would withdraw the charges he had made against her and these appellants. From the testimony of Samuel Glickstein (100a) it would appear that this settlement of their differences was initiated by Stupp himself. It is somewhat significant that none of this testimony is contradicted by Stupp or any other witness for the Commonwealth.

In my judgment appellants have not been accorded the recognized safeguards which are essential to criminal justice.