Commonwealth *v.* Neuman, Appellant.

Argued November 10, 1942.

644

Before Keller, P. J., Cunning-
ham, Baldrige, Stadtfeld, Rhodes, Hirt and Ken-
worthey, JJ.

*Harry R. Back,* with him *Charles D. Hogan, Thomas
D. McBride and Leighton R. Scott,* for appellant.

*Irving W. Coleman,* Assistant District Attorney, with
him *Henry K. Van Sickle,* District Attorney, for ap-
pellee.

Opinion by Rhodes, J., March 2, 1943:

Defendant was tried on two bills of indictment each
of which contained four counts: (1) Cheating by fraud-
ulent pretense, (2) larceny, (3) fraudulent conversion,
and (4) embezzlement by agent. Verdicts of not guilty
were directed on the first two counts in each bill. The
case was submitted to the jury on the counts charging
fraudulent conversion and embezzlement by agent. A
general verdict of guilty followed. Defendant's motions
for a new trial and in arrest of judgment were denied,
and he has taken these appeals.

Appellant challenges the sufficiency of the evidence
to support the verdicts, and also presents numerous rea-
sons why a new trial should be granted. Only one of
these reasons was filed in support of his motion in the
court below. It is the general rule that the court below
may not be charged with error where the matter com-
plained of was not brought to its attention in the mo-

tion for new trial. *Com. v. Parker et al.,* 294 Pa. 144, 155, 143 A. 904; *Com. v. De Felippis,* 245 Pa. 612, 616, 91 A. 1059; *Com. v. Robinson,* 148 Pa. Superior Ct. 61, 70, 24 A. 2d 694. Although most of the matters embraced in the assignments of error are not properly before this court, the various contentions advanced by appellant's counsel will be considered briefly.

Some time in the early part of 1941, appellant called upon John G. Henzelman, in Easton, and inquired whether the latter owned stock of the Motors Mortgage Corporation. When Henzelman informed appellant that he did, appellant told Henzelman that the corporation was liquidating, and that he was a lawyer who had been appointed by the courts of Pittsburgh to look after the interest of the common stockholders. Appellant told Henzelman that his stock was worthless, but that he would get for him all that he could. Henzelman, who was the owner of 67½ shares of said stock, thereupon produced the stock certificates and appellant copied the numbers. On June 17 or 18, 1941, appellant returned to Henzelman's home, and at that time the latter delivered to appellant the stock certificates endorsed by him and witnessed by his wife. Appellant stated that he would "have to take them along and turn them in," and that it might be six months before Henzelman would hear from him; that it "would take maybe six months, probably a year, before the company was liquidated." At the same time, appellant gave Henzelman a note in the amount of $176.18 payable on demand, saying that that was "about the amount [Henzelman would receive], after the state tax was taken off." This amount indicated a net return to Henzelman of $2.68 per share for his stock. Appellant testified that he was not personally purchasing the stock, and according to Henzelman appellant gave him the note so that he would "have something to show for the stock [he] had turned over to him." Thereafter

appellant never communicated again with Henzelman in any way, nor did Henzelman ever receive from appellant his stock certificates or the proceeds of their sale.

There was a similar transaction involving 20 shares of the same stock owned by Mr. and Mrs. John Suter, of Bethlehem, Pa. According to their testimony they never received a note from appellant, although he testified that he gave them one.

It was shown that all of the certificates covering 87½ shares were sent by appellant to one W. B. Reid, in Pittsburgh. Reid testified that in April, 1941, he had made arrangements with appellant to sell the stock of this corporation for a commission or fee of 25 cents per share, and that prior to selling the stock here involved he had sold 300 shares thereof which had been sent to him by appellant for that purpose. Appellant admitted that in April Reid had informed him that he would pay $2.68 per share net to appellant, this being at the rate of $3 per share less commission of 25 cents and tax of 7 cents per share. It was the practice of Reid to deduct his commission of 25 cents plus 7 cents for state and federal taxes, and remit the net proceeds to appellant. On June 20, 1941, Reid sold the Henzelman and Suter stock to a party in Pittsburgh for $3 per share, receiving $262.50. After deducting his fee and the tax, he wired the balance to appellant by Western Union on the same date.

There is some confusion in the record relative to the dates upon which appellant called upon Henzelman and the Suters, but they are in agreement that the last time they saw him was when he took their stock certificates. In any event, it was definitely established by the testimony of appellant himself, and other evidence, that appellant sold this stock through Reid on June 20, 1941, and still retained the proceeds at the time of the trial.

Appellant's explanation of the transaction was that,

after selling the stock, he became apprehensive that he had violated the Pennsylvania Securities Act, and withheld the money due Henzelman and the Suters until he might determine whether or not a violation had been committed. Finally, believing his actions unlawful, he had continued to withhold the money, hoping to acquire other stock with which to replace that which had been sold, and thus place the owners in statu quo ante. He stated that he had at all times kept the money received by him from Reid in a box in his home in Philadelphia. He further stated that after selling the stock he had again visited the owners, informed them of his predicament, and said that he did not know whether he would be able to return their stock or give them the proceeds; that he "would be some months in deciding" the question, and in the meantime gave them a note dating it back to June when he originally received the stock. The Commonwealth showed that at one time appellant had in his possession 38 shares of the same stock, which he had acquired personally, and yet he never attempted to substitute it for any of the stock he had obtained from Henzelman or the Suters.

Appellant contends that he was denied a fair and impartial trial, and submits three reasons. The first is that he was named in the indictment under several aliases. It is true that, as far as this record discloses, appellant never used any name but Paul Robert Neuman in the transactions directly involved in or incidental to this transaction, except that the note given to Henzelman was signed "P. R. Neuman." There appears to have been no reason for the inclusion of the aliases, and it would have been better to have omitted them. However, no attack was made upon the indictment in this respect, and no objection was made when it was sent out with the jury. In his charge the trial judge said: "The fact that this defendant is indicted under the names of Mathew Lamb, M. J. Kane, P. Neu-

man and P. Nieman has nothing to do with your verdict in this case. He is not to be prejudiced by the manner in which the Commonwealth indicted him. The only name that we know him by here in this court room in this trial is Paul Robert Neuman, and that's the name he gave when he was sworn as a witness in his own behalf." Under the circumstances, the express negation by the trial judge of such prejudicial inference as might otherwise have been made by the jury must be considered as affording to appellant all the protection to which he was entitled. As was said in *D'Allessandro v. United States,* 3 Cir., 90 F. 2d 640, at page 641: "Another practice which provokes comment is that of loading a defendant with a long list of aliases. This, it is true, may afford protection to a defendant, if called upon to prove former jeopardy. None the less the string of aliases may be so arranged as to carry the implication that the defendant belongs to the so-called criminal class and thus half convict him as soon as the indictment is disclosed to the jury.

"This appellant, however, cannot be heard to complain either of the form of the indictments or of their having been submitted together to the jury, because he made no appeal to the court to protect him from the evil consequences which he now charges followed."

Secondly, it is said that Officer Picton, of the Pennsylvania Motor Police, who was named as prosecutor in the indictments, was offered as a witness by the Commonwealth "for no other purpose than to convince [the jury] of the fact of the seriousness of the charge and of the fact that the Commonwealth itself was prosecuting it rather than the local authorities." The officer testified that he was the prosecutor, that he investigated the cases on trial, and that he signed the informations. No objection was made to his testimony, and it is difficult to see on what ground one could have been advanced. It is a common practice for the officers of the

Pennsylvania Motor Police to sign informations and to be named as the prosecutors in indictments. In our rural sections, especially, the officers of the Pennsylvania Motor Police, or the "State Police" as they continue to be known, will be found as prosecutors and witnesses in many criminal cases, and it is doubtful whether juries attach particular significance to the cases in which these officers participate. But assuming that the appearance of Officer Picton served to impress the jury in this case that the Commonwealth was the prosecutor, that is of no avail to appellant. The Commonwealth is the ultimate prosecutor in every criminal case. The fact is signified in the caption of such case, and is so well known that recognition of it here seems superfluous.[1]

Finally, in this connection, it is argued that "W. B. Reid, a commonwealth witness, who had had dealings with this defendant in the sale of the kind of stock which was the subject matter of the present prosecution, and was thus pointed out to the jury as an associate of the defendant, was asked questions by the district attorney indicating he was involved in pending criminal charges although no real purpose in asking these questions other than to discredit the defendant was shown." This witness was called for a proper purpose, namely, to show that he had sold the stock for appellant and transmitted the proceeds to him pursuant to their previous agreement. However, before examining the witness as to these facts, the assistant district attorney questioned him concerning some criminal charges which apparently had been brought against him in Allegheny County. Following these questions the trial judge, at the request of the assistant district

---

[1] "All prosecutions shall be carried on in the name and by the authority of the Commonwealth of Pennsylvania, and conclude 'against the peace and dignity of the same.'" Constitution, art. 5, §23.

attorney, addressed the witness as follows: "Q. You, as a witness, under the Constitution of Pennsylvania and of the United States, need not answer any questions that in your opinion tend to incriminate. or degrade you. Now, you have stated that you are under arrest in Allegheny County, as I understand it, and have posted bail for some charge, criminal charge, in Allegheny County. If in your own mind you honestly believe that any answer you give in this proceeding would tend to hurt you at the time of your own trial in the criminal court of Allegheny County, you can say you don't want to answer because it may incriminate you, but if you feel that it wouldn't hurt your own interests out in Allegheny County, then you can answer the question. You understand that? A. Yes, sir." Up to this point the witness had not claimed any constitutional privilege, nor does it appear that he did so at any stage of his testimony. It may have been proper for the assistant district attorney, in fairness to the witness, to advise him of his constitutional privilege (see In re *Myers and Brei*, 83 Pa. Superior Ct. 383, 394),[2] but, the witness not having been asked any question pertaining to the case, and not having asserted a claim of privilege, the suggestion of the assistant district attorney and the admonition of the court were premature. *Com. v. Tracey*, 137 Pa. Superior Ct. 221, 224, 8 A. 2d 622. However, no objection was made to this line of examination for the reasons now alleged, and such objections as were made were sustained by the trial judge. On cross-examination, appellant's counsel questioned the witness further concerning these charges

---

[2] ". . . . . . the witness himself must claim the privilege, but . . . . . . his attorney could suggest when occasion warranted such claim or could ask the court to advise the witness of his constitutional privilege as respects any question put to him: *State v. Pancoast*, 5 N. D. 516, 67 N. W. 1052." 83 Pa. Superior Ct. 383, at page 394.

against him. Although the assistant district attorney probably went further than was necessary in laying the foundation for the witness to claim his constitutional privilege against self-incrimination, we are not convinced that prejudicial error was committed.

In another branch of his argument counsel for appellant contends that the charge of the court was inadequate with respect to the definition of a reasonable doubt, and as to what constituted fraudulent conversion and embezzlement by agent. The trial judge was not requested at the trial to amplify his charge as it related to these matters, nor did appellant take even a general exception thereto. It is enough to say that with respect to reasonable doubt the charge was substantially in accord with the definition laid down in *Com. v. Kluska*, 333 Pa. 65, 73-75, 3 A. 2d 398. The trial judge gave the jury the statutory definitions of the crimes with which appellant was charged, reviewed in much detail the evidence bearing upon question of fraudulent intent, and expressly instructed the jury that it was for them to decide whether appellant had withheld the money he received from the sale of this stock with an honest or fraudulent intent. This was adequate. *Com. v. Syren et al.*, 150 Pa. Superior Ct. 32, 27 A. 2d 504, 509. Cf. *Com. v. Tracey*, supra; *Com. v. Wiener*, 340 Pa. 369, 375, 376, 17 A. 2d 357.

It is argued also, in behalf of appellant, that error was committed in permitting the fourth count of each indictment to be amended to charge appellant with embezzling the proceeds of the stock rather than the stock itself.[3] This occurred after the Commonwealth had rested its case and before the defense had opened. Although objection was made to the allowance of the amendments and overruled, appellant did not plead

---

[3] This was the only reason assigned in the court below in the motion for a new trial except the three customary, general, and formal reasons.

surprise or ask for a continuance. See *Com. v. Streets,* 113 Pa. Superior Ct. 65, 172 A. 31. There has been a constant trend toward liberalizing, both by statute and decision, the amendability of indictments, and the history of this development has been previously reviewed by our courts. *Com. v. Tassone,* 246 Pa. 543, 92 A. 713; *Com. v. Liebowitz,* 143 Pa. Superior Ct. 75, 17 A. 2d 719; *Com. v. Streets,* supra. We think allowance of the amendment in the instant case was a proper exercise of the court's discretion under section 13 of the Act of March 31, 1860, P. L. 427, 19 PS §433. The amendment conformed to the proof. Section 13 of the act provides in part as follows: "It shall and may be lawful for the court before whom the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense upon such merits, to order such indictment to be amended, according to the proof." Consequently, a sound discretion must be exercised by the trial court in each case upon its circumstances; and the action of the court, in such a case, will be reversed only for an abuse of discretion which is clearly manifest. *Com. v. Sapk,* 80 Pa. Superior Ct. 297, 301. Moreover, there was a general sentence on each indictment in the case before us. See *Com. v. MacDonald,* 74 Pa. Superior Ct. 357, 359.

Appellant questions the sufficiency of the evidence to support his conviction. As to the count for fraudulent conversion, the Commonwealth proved that appellant had obtained the stock belonging to Henzelman and the Suters, sold it, and obtained the proceeds on June 20, 1941, which proceeds he still retained in his possession at the time of the trial on April 13, 1942. There was no evidence of a demand on the part of the owners of the stock for its return or for the proceeds thereof, but in view of the evidence that appellant had told them at the time he obtained the stock that he

might have difficulty in disposing of it, and that a long time might elapse before they heard from him, the absence of a demand is not controlling. Furthermore, appellant sold the stock almost immediately after receiving it. The credibility of his explanation for his failure to remit the proceeds to the owners, as bearing upon his good faith, was a question for the jury to decide under all the circumstances. It is not surprising that they resolved it against him. Appellant's fraudulent intent was a permissible and reasonable inference from the proofs. *Com. v. Wiener,* supra. See *Com. v. Willstein,* 146 Pa. Superior Ct. 357, and cases cited page 360, 22 A. 2d 613.

Appellant was sentenced generally on each indictment, and the court directed that the sentences were to be concurrent. Since the sentence imposed is supported by the count for fraudulent conversion, the question of the sufficiency of the evidence to support the count for embezzlement by agent becomes academic, and will not be considered. *Com. v. Pearlman et al.,* 126 Pa. Superior Ct. 461, 470, 191 A. 365; *Com. v. Rothensies,* 64 Pa. Superior Ct. 395, 426, affirmed 256 Pa. 337, 100 A. 828; *Com. v. Stanley,* 39 Pa. Superior Ct. 402, 404.

That portion of appellant's argument which challenges the authority of the Pennsylvania Securities Commission to institute criminal proceedings, such as the instant case, does not merit extended discussion. Aside from the fact that the appearance of Hardie Scott, Esq., "Deputy Attorney General of the Commonwealth of Pennsylvania, assigned to the Pennsylvania Securities Commission," was entered for the Commonwealth, together with that of the assistant district attorney, there is nothing in this record to support this portion of appellant's argument. It does not appear from the record that Mr. Scott took any part in the trial, and the reason for his appearance is not disclosed. There is

654

nothing to show that the prosecution was in fact instituted by the commission. Under these circumstances, we are not called upon to decide the question now raised by appellant, and it will be time enough to do so when we are confronted by a record in which that issue has been properly presented.

The assignments of error in each appeal are over-ruled.

The judgments are severally affirmed, and the record is remitted to the court below, and it is ordered that defendant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with the sentence, or any part thereof, which had not been performed at the time each appeal in this case was made a supersedeas.